## POOL v. UTAH COUNTY LIGHT AND POWER COMPANY et al.

No. 2027.   Decided November 13, 1909 (105 Pac. 289).

1. WATERS AND WATER COURSES—APPROPRIATION—STATUTORY PRO-
   VISIONS. Laws 1903, p. 88, c. 100, regulating the appropriation
   of water rights, must be liberally construed according to Comp.
   Laws 1907, section 2489, with a view to effect the object of the
   statute and to promote justice. (Page 516.)

2. STATUTES—CONSTRUCTION. In construing a particular section
   of an act, all the provisions of the act as well as its object will
   be considered, but, if the language is unambiguous, it must
   ordinarily be given full force and effect. (Page 516.)

3. WATERS AND WATER COURSES — APPROPRIATION — FORFEITURE.
   Where application for an appropriation of water is made to the
   state engineer according to Laws 1903, pp. 88-100, c. 100, sec-
   tions 1-42, giving him large discretionary powers with au-
   thority to extend the time that he has fixed for completing
   works required to perfect the appropriation, and work is com-
   menced within the statutory time and prosecuted in good faith
   and with due diligence, he may extend the time if not beyond
   the final limit fixed by the statute, although the application
   therefor is made after the time first fixed by him has expired.
   (Page 519.)

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Action by William H. Pool against the Utah county Light & Power Company, and another.

Judgment for defendants.   Plaintiff appealed.

AFFIRMED.

*C. S. Varian* for appellant.

*J. W. N. Whitecotton* and *A. J. Evans* for respondents.

Where a statutory power or jurisdiction is granted, which otherwise does not exist, whether to a court or an officer, the grant is strictly construed, and the mode of procedure prescribed must be strictly pursued. (*Burrows v. Kimball,* 11 Utah 150; Sutherland Statutory Construction, secs. 454-458.) When a statute gives a right or remedy which did not exist at common law, and provides a specific method of enforcing it, the mode of procedure provided by the statute is conclusive, and must be pursued strictly. (26 Am. and Eng. Ency. [2d Ed.], p. 671; *Campbellsville Lumber Co. v. Hubbart,* C. C. A. 112, Feb. 724.) Suppose that no application or order for extension was made at any time, but that by the law there was jurisdiction to grant an extension after the expiration of time first granted. In such event, no one could safely make application to appropriate any of the water included in the defendant's attempted appropriation, nor make preparations for the construction of works, or the diversion of the water for any purpose, since it could not be known definitely and finally before the expiration of the statutory period that the defendant would not ask for, and procure an extension. This is an apt case for the illustration, since it is alleged in the complaint, and admitted in the answer, that the quantity of water, to-wit: 100 second feet, sought to be appropriated by each party is all of the unappropriated water in the stream. Under settled rules of construction, and with the support of authorities upon other statutes conferring powers in relation to the time of doing acts, employing like language with the one under consideration, we submit that the construction given the statute by the court below is erroneous, and that the state engineer had not the power to extend the time, after the original time granted had expired. It may be noted that the practice in this respect has been changed in the office of the engineer, and extensions are not now granted, after the expiration of the original time prescribed. (*Butler v. Lawson,* 29 Utah 439; *Smith v. Fisher,* 3 Utah

24; *Elliott v. Whitmore,* 10 Utah 253; *Rogers v. Traders' Bank,* 60 Kan. 855, 55 Pac. 463; *Schwartz v. Davis,* 74 Pac. 800, 9 Ida. 238; *Ferree v. Walker,* 54 Kan. 49, 36 Pac. 738; *Brown v. Crabtree,* 47 Pac. 525; *Abel v. Blair,* 3 Okla. 399, 41 Pac. 342; *Polson v. Pursell,* 4 Okla. 93, 46 Pac. 578; *Sigmon v. Pool,* 49 Pac. 944; *In re Clary's Estate,* 112 Cal. 292, 44 Pac. 569.)

## RESPONDENT'S POINTS.

A diligent search for authorities has failed to disclose any case just like the present, and we are, therefore, left, as it seems, to the analogy of similar cases, and the nearest we have been able to find is the law relating to mining locations. The law is well settled that the facts existing in this case would not work a forfeiture of rights to a mining location. (*Rose v. Richmond Mining Co.,* 17 Nev. 25; *Belk v. Meagher,* 104 U. S. 279; Snyder on Mines, sec. 572.)

FRICK, J.

This action originated in the District Court of Utah County, and involves the question as to whether the appellant or respondent has the prior right to the use of the waters of American Fork Creek, a stream flowing through Utah County. The district court found the issues in favor of respondent, and entered judgment dismissing the action; hence this appeal.

Respondent's claim to the water arises by virtue of an application made by it under chapter 100, page 88, Laws Utah 1903, entitled "Water Rights and Irrigation," and appellant's claim is based upon his application made under the same act as amended by chapter 108, page 145, Laws Utah 1905. Since the provisions of the two chapters are the same in so far as the rights of the parties to this action are concerned, we shall refer to the act of 1903 only. By this act very important changes for the appropriation and perfecting of rights to the use of public waters of this state were effected. In view that the questions presented for decision

involve the construction of certain provisions contained in said act, we shall, in substance at least, set forth such parts as we deem material to a full understanding of the questions decided. Section 1 of the act creates the office of state engineer. The governor, with the approval of the senate, is required to fill the office by appointment. In defining a part of the powers and duties of the state engineer, said section provides as follows:

"He shall have general supervision of the waters of the state and of their measurement, apportionment and appropriation. . . . He shall have power to make and publish such rules and regulations as he may deem necessary from time to time, to fully carry out the provisions of this act and secure the equitable and fair apportionment of the water according to the respective rights of appropriators."

In referring to the right to acquire the use of unappropriated water, section 34 of said act provides:

"Rights to the use of any of the unappropriated water in the state may be acquired by appropriation, in the manner hereinafter provided, and not otherwise. The appropriation must be for some useful or beneficial purpose, and, as between appropriators, the one first in time shall be first in right."

Section 35 provides that the application for an appropriation of water must be made to the state engineer. This section specifically prescribes how the application must be made, and what it must contain. Since there is no claim that this section was not complied with, and as it is quite long, we shall not state its contents further. Section 36 provides the duties of the state engineer with respect to the application. No contention arises under this section, nor under section 37, which provides that a notice of the application shall be published by the state engineer. Section 38 provides that any interested person may "within thirty days after the completion of the publication of said notice, file with the state engineer a written protest against the granting of said application, stating the reasons therefor, which shall be duly considered by said engineer. He may, in his discretion, hear evidence in support of or against such

application, and shall take such action thereon as he may deem proper and just." Section 42 is as follows:

"In his indorsement of approval of any application, the state engineer shall require that actual construction work must begin within ninety days from the date of such approval, and that the construction of the proposed irrigation works shall be completed within a period of five years from the date of such approval. He may limit the applicant to a less period for the completion of the work and the perfection of the right. The state engineer shall have authority, for good cause shown, to extend the time within which any irrigation or other works shall be completed, and the appropriation perfected."

It is also provided in the act that in some instances the party feeling himself aggrieved may review the action of the state engineer by a direct appeal to the district court of the county wherein the water is diverted for use, and in other instances may bring an action in such court by which the actions taken by the state engineer may be indirectly reviewed. The state engineer is invested with a large discretion in discharging his duties with respect to effectuating at least some of the important provisions of the act. The act is quite comprehensive, and, in general, it may be said that its provisions may be readily understood and complied with. Yet, as we shall see, there are some provisions which require careful consideration in order to determine their true meaning and intent. The act, to a large extent, seems to be modeled after the irrigation law of Wyoming. (See chapters 10-14, inclusive, title 9, Revised Statutes Wyoming 1899.)

The questions involved in this appeal all arise under the provisions of section 42, which we have set forth in full. This section is a copy of section 922 of chapter 14 of title 9 of the Revised Statutes of Wyoming, aforesaid, and was originally adopted in that state in 1895. (See section 1, chapter 45, page 89, Session Laws Wyoming 1895.) North Dakota has a similar section. (See section 30, chapter 34, page 53, Laws North Dakota 1905.)

The facts that are deemed essential to this appeal are substantially as follows: That on July 7, 1904, the re-

spondent made application to the state engineer, under the act of 1903 above referred to, "to appropriate one hundred cubic feet per second of time of the waters of American Fork Creek, in Utah County, State of Utah, to be diverted from said creek in Utah County, and conveyed through a pipe line to a point of use and distribution for the purpose of developing power to generate electricity for lighting and propelling machinery and other purposes;" that the application was approved by the state engineer on the 16th day of March, 1905, and the respondent was, by order of the state engineer, required to begin the construction of its plant and pipe line to be used in generating the power aforesaid within three months from said 16th day of March, 1905, and to complete said plant within eighteen months from the date aforesaid; that respondent - commenced work within three months from March 16, 1905; that it did not complete the construction of said plant within eighteen months from said date; and that it did not apply for nor obtain an extension of the time within which to complete said plant from the state engineer until the 23d day of October, 1906, on which day the state engineer, on the application of respondent, did make an order extending the time within which to complete said plant to the 1st day of August, 1907, and on the 10th day of July, 1907, upon the further application of respondent, the state engineer made a further order of extension to the 1st day of December, 1907; that, when the first eighteen months had expired, the respondent "was actually engaged in completing said works, and had expended $50,000 thereon, and it inadvertently failed and neglected to apply for and procure an extension of time before the time fixed expired;" that, before the expiration of the second extension, the respondent "had completed its said works at a cost of $120,000, and had completed its appropriation of said water, and was at the time this action was commenced using the said water to the extent of 50.40 cubic feet of water per second, which is all the water it can use through" the diverting system. The court also found that

appellant on the 16th day of December, 1905, duly made and filed his application with the state engineer to appropriate one hundred cubic feet of water per second of time to be diverted from the same stream in Utah County; that appellant's application was made for water to be used for purposes similar to those above enumerated; that appellant's application was approved by the state engineer on the 6th day of September, 1906, and he was required to begin the construction of his works within six months, and to complete them within two years from said date; that no written protest was made to the state engineer against the application of appellant within thirty days or at any time; that the appellant commenced work upon the construction of his plant within six months, to-wit, on the 3d day of March, 1907, with men and teams and continued said work until the 9th day of said month, "when he was notified to cease all work on his pipe line and power site," and he then ceased work. The reasons why and by whom appellant was notified to quit work are not important; since, if appellant can succeed in his contentions, the fact that he was prevented and the reasons that prevented him from the further prosecution of his work are not deemed material. It is also conceded that each one of the applicants made application for the full amount of water that is contained in said stream.

As conclusions of law the court, in substance, found that the respondent "has made a valid appropriation of 50.40 cubic feet per second of time of the waters" of the stream aforesaid, "and that said appropriation is prior and superior" to appellant's appropriation.

In our view, the material question to be determined is whether the state engineer exceeded his authority in granting the respondent the first extension of time in which to complete its plant in view of the time when and the circumstances under which such extension was granted. Counsel for appellant most earnestly insist that at the time the state engineer granted the first extension of time he was without jurisdiction or power to do so; that his act in that regard was void and of no force or effect; that respondent's right

to the use of the water in question was not completed within the time as fixed by the state engineer nor within any authorized extension of time; and hence its right to the use of the water lapsed or has been forfeited. Upon the other hand, respondent's counsel, with equal earnestness, assert that the state engineer, by virtue of the statute, had full power and authority to grant both of the extensions of time, and that the application of respondent was perfected substantially in accordance with the laws of this state, and hence is a valid appropriation of the water applied for, just as the court found it to be. Which of these contentions shall prevail depends upon the true meaning and intent of the act referred to, and especially upon the construction to be given sections 1 and 42 of said chapter 100, both of which are directly involved.

By reference to section 1 of the act, a part of which we have quoted, it will be seen that a large discretion is vested in the state engineer to the end that he may "fully carry out the provisions of this act, and secure the equitable and fair apportionment of the water according to the respective rights of appropriators." Again, in section 38, it is provided that, in case a protest is made against any application to appropriate water, the engineer "shall take such action thereon [the application] as he may deem proper and just." In other portions of the act equally broad discretionary powers are vested in the engineer, but subject to review by the district courts either by a direct appeal from the engineer's orders or by an independent action like the present. Counsel for appellant further contend that "when a statute gives a new and unusual remedy, and directs how the right to the remedy is to be acquired or enjoyed, and how it is to be enforced, the act should be strictly construed; and the validity of all acts done under the authority of such an act will depend upon the compliance with its terms." (*Campbellsville Lumber Co. v. Hubbert*, 112 Fed. 724, 50 C. C. A. 435.) The doctrine enunciated in the foregoing quotation is elementary, and when a question arises under statutes which fall within the class defined in the quotation, the

courts usually apply the doctrine there asserted with more or less strictness. This is well illustrated by Mr. Justice Lurton in the opinion quoted from above. We are not prepared to hold, however, that chapter 100, which is under consideration here, strictly speaking comes within the class of statutes of which Mr. Justice Lurton speaks. Nor are we prepared to say that the ancient rules of strict construction with respect to any class of statutes should be rigidly enforced in this state. Section 2489, Comp. Laws 1907, which in construing statutes of this state is always to be considered, and whenever applicable to be heeded, provides as follows:

"The rule of common law that statutes in derogation thereof are to be strictly construed has no application to the Revised Statutes. The Revised Statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice. Whenever there is any variance between the rules of equity and the rules of common law, in reference to the same matter, the rules of equity shall prevail."

In arriving at the true meaning of a particular section, it is not only permissible, but very often necessary, that all the provisions of the act of which the particular section forms a part be considered, as well as the object or purpose of the lawmaking power in adopting the entire act as passed. True it is that the language employed by the legislature must first be considered, and, if this is unambiguous and direct, it must ordinarily be given full force and effect. When, therefore, a forfeiture of a pre-existing right is claimed by reason that a particular clause or section of an entire act has not been literally complied with, and when the statute does not in terms or by unavoidable implication declare that the failure of a strict compliance shall work a forfeiture, the courts may well pause before declaring a forfeiture by reason that all the provisions of the act have not been literally complied with.

Counsel for appellant do not claim that section 42 in terms provides that, unless an extension of time is applied for of the state engineer before the time which is fixed by him has elapsed, he is powerless to extend the time thereafter, nor that the applicant by reason of his failure to apply for an extension before the original time limit has expired thereby forfeits his right to the use of the water applied for. But they contend that the question is analogous to the one by which courts are given power to grant extensions of time for the settlement of bills of exceptions, or to file a transcript on appeal, and matters of that character. This court, in common with other courts, has held that in case a bill of exceptions is not settled or the transcript is not filed within the time limit fixed by the statute, or within an extension of time which was applied for before the statutory time or an extension thereof was reached, then, and in such event, the judge or officer authorized to settle the bill of exceptions or to receive and file a transcript on appeal would be without jurisdiction to do either, and the act of such judge or officer would be void, and of no effect. (*Butter v. Lamson,* 29 Utah 439, 82 Pac. 473; *Bryant v. Kunkel,* 32 Utah 377, 90 Pac. 1079; *Ferree v. Walker,* 54 Kan. 49, 36 Pac. 738; *Swartz v. Davis,* 9 Idaho 238, 74 Pac. 800; *In re Clary,* 112 Cal. 292, 44 Pac. 569.) Upon the other hand, some courts, under statutes similar to ours, have arrived at a different conclusion, and have held that, if the statute fixes a shorter and a longer period within which an act may be done and authorizes an extension of the shorter period but not beyond the longer one provided for, then the judge who, by the statute, is authorized to grant the extension, may do so after as well as before the shorter period of time has elapsed, provided the order granting the extension is made before the final limit has been reached. (*Greenwood v. Cobbey,* 24 Neb. 648, 39 N. W. 833; *McDonald v. McAllister,* 32 Neb. 514, 49 N. W. 377.)

The weight of authority is, however, clearly in accordance with the holding of this court as declared in the cases above cited. In our judgment, however, there is a broad distinc-

tion between the extension of time provided for by the statute for the settling of a bill of exceptions and in granting an extension of time by the state engineer under the provisions of chapter 100, aforesaid. The statute fixes a specific time in which a bill of exceptions must be settled and allowed, and, unless the statutory time is extended by the judge or court, the bill must be settled and allowed within the statutory time. Under the law in question the state engineer, however, alone fixes the time which he is given power to extend. It is true that the law fixes an ultimate limit, namely, five years, but this limit, under the law as it stood in 1903 and 1905, when the respective applications were made, the engineer was powerless to extend. Under the act in question, therefore, the engineer is not authorized to extend the fixed statutory limitation as in the case of settling a bill of exceptions, but one only that he himself has fixed. If we bear in mind that this limit had to be fixed by him at a time when he could not foresee what obstructions might intervene and in some way retard the progress of the contemplated work, and that the limit had to be and was determined on by him alone in accordance with his judgment and discretion based upon such information as he then had, it is easy to perceive why the first limit as fixed by him was intended to be in the nature of a tentative limitation merely. This, it seems to us, becomes more apparent when we keep in mind the powers that are vested in the state engineer in fixing a time limit and in granting extensions. The purpose of vesting such powers in the state engineer seems apparent enough. The statute fixes a final limit which applies to all applications alike. Some applications, however, like the one in question, require a large expenditure of money and a considerable time before the appropriation can be perfected by the full completion of the contemplated works. In order, therefore, to hasten the completion of the works as fast as possible, the engineer is authorized to fix a limit much less than the statutory limit. He also is authorized to fix a limit in accordance with the magnitude of the work. This limit, in the nature of things,

must be deemed to be merely provisional by both the engineer and the applicant.

Again, the state engineer is vested with full power to promulgate rules to the end that both public and private rights may be subserved and protected. If, therefore, he had deemed it equitable and expedient to require applicants to apply for an extension of time before the limit as fixed by him had expired, he might have done so, and, in connection therewith, have fixed a penalty for a noncompliance with such rule. He might perhaps refuse to grant an extension of time unless applied for before the first period as fixed by him had expired subject to review by the courts, but we are of the opinion that, so long as the applicant continues to pursue the work he has undertaken under the application in good faith and with due diligence, the engineer is not without power to grant an extension of time if not beyond the ultimate limit fixed by the statute, although the application therefor is not made until after the time first fixed by the engineer has elapsed. Applying the foregoing doctrine to the facts of this case, there seems no escape from what the result should be. When appellant made his application, and when it was approved by the engineer, respondent, as the court found, had complied with the statute, in that it had commenced the construction of its plant within the statutory time. Further, the court found that, before the time limit fixed by the engineer had expired, respondent had expended $50,000 upon its plant, and at the time the extension was granted it was actively engaged in constructing and completing its works. It also appears from the undisputed facts that, when appellant's application was approved, respondent's application was in full force and effect, and that the time within which respondent might complete its plant as fixed by the engineer had not yet elapsed. Appellant thus obtained whatever rights the approval of his application gave him with full knowledge of respondent's prior application, that it was actively engaged in carrying on the work under its application, and that the state engineer had the power, under the

conditions named in the statute, to extend the time fixed by the engineer in which respondent might complete its plant and perfect its appropriation of the water applied for. The respondent, therefore, had not abandoned its application by ceasing work, nor had it forfeited its rights by reason of a noncompliance with any of the provisions of the statute when appellant's application was approved; nor was this the case when the engineer extended the time to respondent. Under such circumstances, we are clearly of the opinion that the state engineer had the power to grant an extension of time to respondent.

We do not wish to be understood as holding that the state engineer may arbitrarily extend the time limits fixed by him at any time and under all circumstances. It may well be that, if an applicant has ceased work so that it may be deemed a virtual abandonment of his application, the engineer may not in effect reinstate the application after a second applicant's rights under his application have attached, and in that way defeat the rights of the second applicant. No such case is presented, and we therefore content ourselves with holding that, under the facts and circumstances disclosed by the record before us, the state engineer did not exceed his power in granting the extension to respondent, although the application therefor was not made until more than thirty days after the time, as fixed by the engineer, had elapsed, and do not determine what the extent of the engineer's powers to extend the time limit under all circumstances may be.

If we are right in the foregoing conclusions, then the court did not err in hearing the evidence with respect to the character of the work that was done and the time and amount of money expended by respondent up to the time the extensions of time were granted by the engineer of which appellant complains. Nor did the court err in its findings that the respondent commenced the construction of its plant within the time fixed by the statute. The evidence is ample to support the finding in this regard.

In view of the conclusions reached, all other questions discussed by counsel are of no importance, and hence need no further consideration.

The judgment is, therefore, affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.