Proceedings for the determination of the relative rights of the various claimants to the use of the water of the White river and its tributaries, a tributary of the Deschutes river. From an adverse decree, the Wapinitia Irrigation Company and its successors in interest, the Mt. Hood Land Water Company, appeal, which appeal was opposed by the Water Users Corporation of Juniper Flat, a corporation, and others.
REVERSED. REHEARING DENIED.
This is an appeal by the Wapinitia Irrigation Company and the Mt. Hood Land Water Company, its successor in interest, from a decree of the circuit court approving the order of the state engineer declining to grant to the Wapinitia Irrigation Company a further extension of time to complete its irrigation project. *Page 506 
Prior to November, 1923, proceedings were had before the state engineer and the circuit court adjudicating the rights of the various claimants to the use of the waters of White river, resulting in a decree on November 30, 1923. That portion of the decree adjudicating the rights of the Wapinitia Irrigation Company in the waters of that stream is as follows: After a reference to the posting of notices of appropriation by the various parties of water from Frog creek and Clear creek, the decree recites, in substance, that whatever rights were acquired under the notices of appropriation set forth were transferred to the Wapinitia Irrigation Company, a corporation; that the irrigation company and its predecessors in interest have expended large sums of money amounting to several hundred thousand dollars in the development of the irrigation system for the irrigation of the plains, now known as Wapinitia Plains, lying to the south of White river and west of Deschutes river; that the first irrigation was made in 1917 and at that time there were between one thousand and two thousand acres under irrigation; that there has been constructed a canal from Frog creek; that there has been a diversion made from Clear lake at a certain point from which the main canal leads in an easterly direction to the lands to be irrigated, which are therein described. The decree then recites:
"That the amount of land that can be irrigated in said project is uncertain, but is somewhere between 10,000 and 15,000 acres. That the storage reservoir at Clear Lake, when built to its largest capacity, will hold about 18,000 acre feet, and that the water supply of the drainage basin in which said Clear Lake is situated will probably not exceed 10,000 to 12,000 acre feet. That the regular flow of the streams would not *Page 507 
furnish sufficient water to irrigate all of the irrigable lands under said ditch during the whole irrigation season, and it is necessary to have storage water for the purpose of supplementing the regular flow of said streams at low water time. That 250 second feet of water, flowing during the whole irrigation season would be sufficient water to irrigate the irrigable lands under this project. That the ditch of said Wapinitia Irrigation Company runs 10 to 12 miles before it reaches any of the irrigable lands, and the seepage in that distance would necessarily be large, and a 50 per cent allowance would be a reasonable amount to allow for seepage, so that the appropriation from both Clear Creek and Frog Creek for the regular run of the streams, should be limited to 375 second feet."
It is stated in the decree that the storage contemplated seemed to have been in Clear lake and McCubbin's Gulch. McCubbin's Gulch will store about 330 acre feet of water, which is necessary to supply the deficiency in the regular flow, and Clear lake reservoir not to exceed 18,000 acre feet. The date of appropriation for storage was fixed as August 19, 1904, and the regular flow from Frog creek and Clear creek was fixed as July 1, 1903. The decree then states:
"The supply of water received both under the direct flow right herein determined and the storage right herein determined shall be regulated in accordance with the date of priority as prescribed in the general finding herein. That the lands to be irrigated under said progect shall not exceed 12,000 acres, to be located on what is known as Wapinitia Plains, and situated in the following sections, * * *" naming the sections in which it is situated.
The decree further recites:
"That the Wapinitia Irrigation Company has contracted for the sale of water to various settlers named in their statement and proof of claim. These contracts *Page 508 
limit the amount of water to be given to the various water users at one acre foot per acre for each irrigation season. That the parties to said contracts are bound thereby, and water shall be furnished to said parties in accordance with said contracts. That the supply of water in the regular flow to make up the total amount of this appropriation shall be taken from both Clear Creek and Frog Creek, using each creek as supplemental to the other, in order to furnish said complete supply. That the development of said project is not completed. That the main canal and ditch is not large enough to carry water for the development of said project. That the said Wapinitia Irrigation Company must necessarily have additional time within which to complete said project, and the work of developing said project has been carried on by said Wapinitia Irrigation Company and its predecessors in interest in good faith. That five years is a reasonable time within which said Wapinitia Irrigation Company may complete said development, and said Wapinitia Irrigation Company is hereby given five years from the date of entry of this decree to complete said appropriation, and in case said Wapinitia Irrigation Company diligently and in good faith attempts to complete said project within said time, but fails to so complete the same, the State Engineer may make such further extensions as may be necessary and expedient under and in accordance with the laws of the State of Oregon.
"That the State Engineer shall at the expiration of said time, or such extension thereof as he may allow for good cause shown, take the proof of said Company as to the completion of said right, and file his supplemental findings with this Court showing the extent to which said appropriation has been completed."
The five years first alloted to the Wapinitia Irrigation Company, the rights of which have been acquired by the Mt. Hood Land Water Company and *Page 509 
which corporations will hereafter be referred to as "the company," expired November 30, 1928. In June, 1929, the company applied to the state engineer for an extension of time to complete its project. A protest was filed by several of the water users from the Wapinitia Irrigation Company ditch. A large amount of testimony was taken before the state engineer and afterwards reported to the circuit court, together with his findings, and an order made denying the extension of time to the company.
The report of the engineer recites, among other things, "* * * the sole question for determination of the State Engineer at this time is the extent to which the water has been applied to the land."
In the report of the engineer we find the following: "It is also apparent that the dam was not constructed until after the time had expired for the completion of its project as allowed by the decree of court entered November 30, 1923."
Exceptions to the report were filed and upon final hearing by the court a decree was entered which, after reciting the substance of the report of the engineer and other proceedings, is in part as follows:
"1. That the Exceptions of the Wapinitia Irrigation Company, a corporation, and its successor Mt. Hood Land Water Company, a corporation, to the Supplemental Findings of the State Engineer herein filed on July 1, 1931 (which Exceptions were filed on August 7, 1931) be and the same are hereby disallowed.
"2. That Paragraph XXII of the Decree herein entered on November 30, 1923, and all other portions of said Decree germane thereto and depending thereupon, be and it is hereby vacated, set aside and held for naught. *Page 510 
"3. That the Supplemental Findings of the State Engineer heretofore and herein filed on July 1, 1931, and in part quoted above, be and they are hereby adopted in their entirety as and for and adjudged and decreed to be the Findings of Fact and Conclusions of Law of this Court upon which this Decree is made and based.
"4. That all of the rights, inchoate or otherwise, in and to the waters of Clear Creek and Frog Creek, tributaries of White River, a tributary of the Deschutes River, heretofore adjudged to and held for the Wapinitia Irrigation Company, a corporation, and to or for the Mt. Hood Land Water Company, a corporation, as its successor and all rights in said water which have heretofore been, now are, or may ever be claimed by any persons or corporations holding by, through or under said corporations or either of them, are hereby forever annulled, cancelled and held for naught except only the rights therein of the individual water users as appurtenant to their respective lands as in this Decree hereinafter particularly specified, adjudged, decreed and described.
"5. That for the purposes of procuring, distributing and using the waters of Clear Creek and Frog Creek by and for the water users in accordance with this Decree, said water users are hereby granted and decreed an easement and right to use any and all rights-of-way, reservoirs, reservoir sites, flumes and ditches of every kind and description heretofore or now used by the Wapinitia Irrigation Company and/or the Mt. Hood Land Water Company and/or the said water users themselves by and through their said operating corporation, the Water Users Corporation of Juniper Flat to the full extent of the usefulness of said rights-of-way, reservoirs, reservoir sites, flumes and ditches as the same have heretofore existed or do now exist or may be maintained and improved and enlarged for the purposes of diverting, distributing and availing themselves of and using the water rights hereby decreed." *Page 511 
The report of the engineer recites, among other things, that:
"The Company owns no land upon which it claims a water right but was organized primarily for the purposes of selling, distributing and appropriating waters for the water users on the Wapinitia Plains. In carrying out its policy the Company sold under contract, water rights to various individuals for the irrigation of approximately 2,183 acres of land at a price ranging from $40.00 to $60.00 per acre-foot."
It appears that the company sold 2,200 acre feet of water to the land owners prior to the decree of November 30, 1923. During the succeeding five years only forty-eight acre feet were sold. The engineer found from the evidence that the project represents the expenditure of $221,000; that during five years, after the decree of November 30, 1923, the company had expended approximately $2,600 in actual construction, and that according to the testimony of the officers of the company the dam at Clear lake could be completed to a fifteen-foot height by spending $1,500 or $2,500, which would store more than enough water to furnish the outstanding contract holders, and taking the $2,700 previously spent and the $2,500 necessary to partially complete the dam, it would make a total expenditure of $5,200.
As we view it the only question for determination is whether the time for the completion of the Wapinitia Irrigation System should be extended after the expiration of the five years first mentioned in the court's decree. Several other matters are referred to in the record, many of which we do not deem to be strictly germane to the issues herein, while they may bear somewhat upon the question. *Page 512 
It seems that the only available source of additional water for the project was in one of the reservoirs. Clear lake is the site selected for that purpose. In 1924 the company commenced the Clear lake dam. They cleared off timber and brush from the dam site, hauled in sand from Salmon river, purchased and hauled lumber and powder. During the fall of 1924 the work was prosecuted until weather conditions rendered further progress impossible. The Frog creek feeder was constructed and as the funds of the irrigation company, furnished by the sale of stock and bonds and the sale of water, were at that time exhausted, further construction, without being financed by an increased demand for water, was rendered difficult.
In 1928 new plans for a dam at the outlet of Clear lake were prepared and approved by the state engineer. Difficulties over the title to the reservoir site arose which required the expenditure of considerable time and some money. About August, 1929, the work on the Clear lake dam was resumed under the direction of the Mt. Hood Land Water Company and the same was completed to a height of fifteen feet, providing storage capacity of 8,000 acre feet, but the run-off that season was insufficient to fill the resorvoir. Some stored water was used. The expenditures on the dam and for materials, labor and supplies, it is claimed by the company, aggregated approximately $3,204.97.
The financial depression, which has been felt in all undertakings of construction, had a good deal to do with the construction of the Wapinitia project. The ditch was some thirty-five miles long, and, together *Page 513 
with laterals, extended for about seventy miles, and it was a mammoth undertaking. An endeavor was made for the company to cooperate with the water users and the company offered them the privilege of assisting in the work upon the ditch and crediting the same on the fees for maintenance. Something was done in this way, but it was impossible for the company to fill its contracts for water. A portion of the water users nearer the head of the ditch at times obtained their quota; others obtained about one-half, and others a less quantity; sometimes down at the lower end of the ditch they received no water except for domestic and stock purposes.
Mr. N.G. Hedin, manager of the company, testified in regard to the work done since the decree of November 30, 1923, in effect, that they endeavored to obtain funds with which to improve the system and endeavored to enlist business men to take an interest in the project and assist in the finances; that they were unable to collect all the maintenance fees and had difficulty in paying two ditch walkers who would watch the ditch, clean it and strengthen the weak places; that some of the timber which the company bought was hauled forty or fifty miles; that under instructions from the forest department of the government they cleaned the logs and brush off the flood line area of the dam and made a cruise and a survey; that they built a new ditch with the farmers' aid in place of the "Mort Edick" ditch; that in 1925 they enlarged about one and one-half miles of the ditch and did other work, built a flume, and that they were hindered in proceeding further with the construction of the dam and work on the ditch by the water users practically taking possession of the ditch through its corporation, known *Page 514 
as the Water Users Corporation of Juniper Flat. We only refer to a portion of the testimony as a sort of example.
The appellant assigns error of the court in not finding that the state engineer should grant an extension of time to the Mt. Hood Land Water Company. It is contended by the appellant that the state engineer is authorized to grant an extension of time, even though application is submitted after the expiration of the original period fixed for the completion of an inchoate water right. Citing Pool v. Utah County Light Power Co., 36 Utah 521
(105 P. 289, 293); § 5717, Or. L. (§ 47-403, Oregon Code 1930).
The question is a new one in this state, as far as we are advised. It has been held in this state In Re Hood River,114 Or. 112, 131 (227 P. 1065), as follows:
"In the prosecution of the construction of a system of works necessary for the diversion and application of water, in an attempted appropriation of the same, the diligence required by the law does not involve unusual or extraordinary efforts. That which is usual and ordinary with men engaged in like enterprises who desire to speedily effect their designs is required. There must be such assiduity of work of construction of the system as will manifest to the world a bona fide intention to complete it within a reasonable time. The question is one of fact and must be determined from the circumstances surrounding each case.
 * * * * *
"Reasonable diligence is exercised in the diversion of the water, if such diversion keeps pace with the additional area of land brought under cultivation, and the latter in turn be done with reasonable diligence: Seaweard v. Pacific L.S. Co., 49 Or. 157
(88 P. 963-965); Wiel, Water Rights (3d Ed.), §§ 382-385, 483-485; Kinney on Irrigation (2d Ed.), Chap. 39, §§ 734, 736, 738, 740, 741." *Page 515 
Section 47-403, Oregon Code 1930, subdivision 6, provides that the state engineer shall have authority in certain cases where actual construction work has been commenced and not completed, to prescribe the time within which the full amount of the water appropriated shall be applied to a beneficial use, and in determining said time shall grant a reasonable time after the construction of the works or canal or ditch, used for the diversion of the water, and in doing so shall take into consideration the cost of the appropriation and application of such water to a beneficial purpose, the good faith of the appropriator, the market for water or power to be supplied, the present demands therefor, and the income or use that may be required to provide fair and reasonable returns upon the investment. "For good cause shown the state engineer may extend such time." In that connection see also section 47-506.
The statute does not provide that if application for extension of time to complete such works is not made within the time limited therefor, that the rights of the appropriator, either as to the appropriation of water or the works constructed for the purpose of conducting such water, shall be forfeited.
When a forfeiture of a preexisting right is claimed because a particular clause or section of an act has not been literally complied with, and when the statute does not in terms or by unavoidable implication declare that the failure of a strict compliance shall work a forfeiture, the courts will be loathe to declare a forfeiture for the reason that all the requirements of the provisions for an appropriation of water have not been literally complied with. Pool v. Utah County L. P. Co., supra, p. 291. *Page 516 
Although the application of the Wapinitia Irrigation Company for an extension of time for the completion of its works was not filed until about six months after the expiration of the period originally fixed by the decree of the circuit court, such application was entitled to due consideration and the state engineer was fully authorized to grant an extension of time. The work done by the company after the expiration of the first limit of time of five years would not of course be considered the same as though the work had been done within the limited time. Nevertheless such work may be indicative of the intention and good faith of the appropriator.
The statute and the decree of the circuit court awarding the five-year limit should be given a reasonable construction in order to effectuate the purposes designed by the water code.
We find in the report of the engineer, in support of the claim that the ownership of the water right rests in the land owner, this statement:
"This would be true because upon the sale of the irrigation works the owner of a water right would lose his right to have the water diverted, carried and delivered to his land by means of such irrigation works unless he could negotiate a new contract with each succeeding owner of the works."
The rule enunciated in Stanislaus Water Co. v. Bachman,152 Cal. 716 (93 P. 858, 15 L.R.A. (N.S.) 359), has been adopted in this state in In re Waters of Deschutes River, 134 Or. 623, at p. 658 (286 P. 563, 294 P. 1049), to the following effect: That a contract between a land owner and a water company to have water flow from its canal through a lateral ditch to his land for its irrigation for a term of years, or, as a perpetual *Page 517 
right, is a servitude on the ditch and canal and an appurtenance to the land, and therefore is real property. Such a contract, when duly recorded or when a grantee of the ditch has notice thereof, where the land owner is required to pay a certain amount yearly therefor, the contract will have the force and effect of a covenant running with the land and the canal and is binding on the successor in title of the company's system. See alsoFarmer's High Line C. R. Co. v. New Hampshire Real EstateCo., 40 Colo. 467 (92 P. 290).
It is contended on behalf of the company that the state engineer was authorized to grant an extension of time and that such extension was granted to the Mt. Hood Land Water Company. This, as we understand, has reference to a stipulation between the Mt. Hood Land Water Company and Rhea Luper, state engineer, dated April 24, 1930, which shows it was stipulated that the Mt. Hood Land Water Company shall proceed at once to complete the dam at Clear lake; also put the main canal, laterals and sublaterals in such condition that all persons holding contracts for water upon their lands may be carried into full force and effect and sufficient water furnished in full accordance with the contracts for water; that the construction shall be under the supervision of the state engineer and be completed on or before May 15, 1930, provided, however, that the state engineer shall have power and authority to extend this time, depending upon the condition of the elements; that the company should faithfully and efficiently carry into execution the said work, and in that event the company should continue construction work with diligence and complete the same on or before April 1, 1933, so that there *Page 518 
may be reclaimed under the said system approximately 8,000 acres of land; that after the completion of the construction the company shall have two years' additional time in which to apply the water to the proposed use.
As an evident attempt to settle the matters between the company and the water users, the stipulation provides: "That all the proceedings now instituted in Wasco county in which the said Wapinitia Irrigation Company is involved shall be suspended and held in abeyance until further order of the court."
The whole matter, however, was before the court and is involved in this appeal. As we understand the record the stipulation and order of the state engineer was afterwards cancelled.
The law does not require of an appropriator extraordinary efforts or impossible things. At a time when moratoriums are considered and banks take long holidays and many of them close, the question of finances, it seems to us, must of necessity be taken into account in determining as to the diligence and good faith of the company in completing its appropriation.
A new company is now owner of the system. The officers met with the water users and "laid the cards on the table," showing that at the time the water users corporation took possession of the works the company had $5,000 pledged and was in a position to obtain $30,000 with which to complete the dam and better the system. It looked as though, during the taking of the testimony, the whole matter would be amicably arranged between the interested parties. We believe from the testimony that the company did the best it could during the five-year period; that under *Page 519 
the circumstances existing then it diligently and in good faith carried on the work of construction as far as it could and manifested a bona fide intention to complete the enterprise as soon as possible; that from the testimony and all the facts and circumstances shown in the case, the time for the completion of the project and the appropriation should be extended.
Respondents assert "When one claiming an inchoate water right has virtually abandoned work on the project, the state engineer should not grant extensions of time for completion or continuance of work." We cannot concur in the statement that the company then owning the irrigation system and having the water right "has virtually abandoned the work." It is unbelievable that the company, after expending about $221,000 on the system would abandon it.
The decree of November 30, 1923, recognizes the obligation of the Wapinitia Irrigation Company to fulfill its outstanding contracts as shown by the following: "The parties to said contracts are bound thereby and water shall be furnished to said parties in accordance with said contracts." The contracts between the irrigation company and the water users are mutual or reciprocal. Each of the parties is bound to fulfill its stipulations. Any failure on the part of the irrigation company to comply with its contract should be adjusted in a proper manner. Counsel for respondents states that during the five-year period it was "comparable to the Bible class drouth of Egypt."
Under all the circumstances of the case a failure of the company in part to deliver the water contracted, when there was not water enough to supply the needs of the water users, would not cause a forfeiture of the *Page 520 
rights of the company in the irrigation system. See PringleFalls Power Co. v. Patterson, 65 Or. 474 (128 P. 820, 132 P. 527).
An "abandonment" as applied to water appropriation, and a similar rule would apply to an irrigation system, is an intentional relinquishment of a known right ascertained from the conduct and declaration of the appropriator. Pringle Falls PowerCo. v. Patterson, supra, p. 485.
Paragraph 2 of the supplemental decree, the last one of the circuit court, is as follows: "That paragraph XXII of the decree herein entered on November 30, 1923, and all other portions of said decree germane thereto and depending thereupon, be and it is hereby vacated, set aside and held for naught." The original decree of November 30, 1923, was a final decree. The time for vacating or changing that decree had long since passed. Nothing was retained in the bosom of the court save and except the directions to the state engineer at the expiration of the five years awarded to the Wapinitia Irrigation Company to complete the project to take proof of said company as to the completion of said right and file findings in the court "showing the extent to which said appropriation has been completed." That paragraph of the later decree quoted above is therefore set aside.
Paragraph 5 of the later decree, granting to the water users an easement and right to use any and all of the rights-of-way, reservoirs, reservoir sites, flumes and ditches of every kind and description heretofore or now used by the Wapinitia Irrigation Company or the Mt. Hood Land Water Company or the said water users themselves by and through their said operating corporation, the Water Users Corporation of *Page 521 
Juniper Flat, to the full extent of the usefulness thereof, for the purpose of diverting, distributing and availing themselves of and using the water rights hereby decreed, in effect, for all practical purposes, grants to the water users and the corporation mentioned the irrigation system. As we view it, that part of the decree is not within the issues embraced in this case. We cannot view it as being equitable or legal.
The right of an irrigation company to own and operate its irrigation system is a sacred right to real property. So, also, is the right of the water users to use the water from the system in accordance with their contracts. See Pleasant View IrrigationCompany v. Milton-Freewater Hudson Bay Irrigation Company, ante p. 492 (16 P.2d 939), decided December 13, 1932, by Mr. Justice CAMPBELL, where he quotes from the case of Eldredge v.Mill Ditch Company, 90 Or. 590 (177 P. 939), and it is construed in considering the rights of a ditch company organized for the purpose of delivering, renting and selling water rights to irrigators. In the Pleasant View Irrigation Company case the water users constructed a ditch along the line of Milton-Freewater Hudson Bay Irrigation Company ditch and claimed the right to the water dating from the time that they had used it from the Hudson Bay Company's ditch. The opinion in the case of Eldredge v. Mill Ditch Company is not authority for the turning over of the rights-of-way, reservoirs, reservoir sites, flumes and ditches of every kind and description of the Wapinitia Irrigation Company or the Mt. Hood Land Water Company. The Eldredge case is cited by counsel for respondent, suggesting that "It is closely approaching public ownership of irrigation systems." With this contention we cannot agree. *Page 522 
The quotation in respondents' brief from In re Water Rights ofWillow Creek, 119 Or. 155, p. 198 (236 P. 487, 236 P. 763,237 P. 682, 239 P. 123), as follows: "We hold that the appellant members of the Water Users' Association purchased a definite quantity of water and are entitled to receive that quantity except in case of a shortage caused by means beyond the control of the owner and distributor of the system:" indicates that in case of shortage of water caused by means beyond the control of the owner of the system would at least have to be taken into consideration.
The matter of the application for an extension of time of the Wapinitia Irrigation Company, now the Mt. Hood Land Water Company, has been pending since June, 1929, nearly four years, which has no doubt retarded the plans for the completion of the irrigation system.
The decree of the circuit court will be reversed and one will be entered granting the Mt. Hood Land Water Company the privilege of proceeding at once to complete its irrigation system, put the canals, laterals and sublaterals in such condition that all persons holding contracts for water service upon their lands may be carried into full force and effect and sufficient water furnished in accordance with the contracts heretofore entered into between themselves and the Wapinitia Irrigation Company, which work shall be under the supervision of the state engineer and done within two years from the date of the entry of the mandate herein in the circuit court. In case the Mt. Hood Land Water Company shall faithfully and efficiently carry into execution the work above specified, then the company shall continue construction work with diligence and complete the same and apply *Page 523 
the water to a beneficial use on or before June 1, 1938, so that there may be reclaimed under the system approximately 8,000 acres of land. At the expiration of either of the different periods of time herein mentioned for construction work the state engineer is authorized to take proof of the work done by the company and upon good cause therefor being shown to extend the time or periods for such work and report to the circuit court, showing the extent to which such system and appropriation has been completed.
RAND, ROSSMAN and KELLY, JJ., concur. *Page 524