Argued October 8; modified November 10; rehearing denied
December 15, 1936

IN RE WHITE RIVER AND ITS TRIBUTARIES

## WAPINITIA WATER CO. *v.* WATER USERS CORPORATION OF JUNIPER FLAT ET AL.

(62 P. (2d) 22)

In Banc.

*Percy A. Cupper,* of Salem, and *Robert E. Ellin-wood,* of Portland (Harry G. Hoy, of Portland, on the brief) for appellants.

*Francis V. Galloway,* of The Dalles, for respondent.

RAND, J. In a proceeding brought pursuant to what is now chapter VI, title 47, Oregon Code 1930, to adjudicate the water rights of the various users of Deschutes river and its tributaries, the Wapinitia Irrigation Company was adjudged to be the owner of a right to divert water from Frog creek and Clear creek and of a ditch or canal leading therefrom to Juniper Flat where the same was delivered to the lands of certain water users to whom that company had contracted to deliver the same for irrigation purposes. That proceeding resulted in a decree entered in the circuit court of Wasco county pursuant to the mandate of this court in accordance with the opinion of this court rendered December 30, 1930. See *In re Water Rights of Deschutes River,* 134 Or. 623 (286 P. 563, 294 P. 1049).

Frog creek is a tributary of Clear creek which in turn is a tributary of White river and White river is a tributary of Deschutes river.

In and by the terms of the decree, the Pacific Power and Light Company was adjudged a priority over said company of 250 second-feet of the water flowing in White river for the development of electric current and the point of diversion and the location of its plant were below the point of diversion and the lands of said water users.

At the time of the adjudication, either because there was not sufficient water remaining in Frog creek and Clear creek after supplying the Pacific Power and Light Company with the water adjudicated to it or because the irrigation system of the company was in-

sufficient to carry the quantity of water required to comply with its contracts with said water users, a specified time was granted by said decree to the Wapinitia Irrigation Company in which to enlarge its system so as to enable it to comply with its said contracts.

Nothing, however, was done by said company in compliance with the terms on which the right to construct additional works had been granted and the rights and interests of the Wapinitia Irrigation Company had, in the meantime, passed to and become vested in the Mt. Hood Land and Water Company, which company likewise failed to comply with the terms on which the permit had been granted. At the expiration of the time granted by the decree to the Wapinitia Irrigation Company, that company and its said grantee made written application to the state engineer for a further extension of time to complete its said system, so as to divert additional water and perfect its appropriation of the waters adjudicated to it. The state engineer denied said application and his action was affirmed by the circuit court for Wasco county, but, upon an appeal to this court, the decree of the circuit court was reversed. In reversing said decree, this court, in *In re Waters of White River*, 141 Or. 504 (16 P. (2d) 1109), said:

"The decree of the circuit court will be reversed and one will be entered granting the Mt. Hood Land & Water Company the privilege of proceeding at once to complete its irrigation system, put the canals, laterals and sublaterals in such condition that all persons holding contracts for water service upon their lands may be carried into full force and effect and sufficient water furnished in accordance with the contracts heretofore entered into between themselves and the Wapinitia Irrigation Company, which work shall be under the

supervision of the state engineer and done within two years from the date of the entry of the mandate herein in the circuit court. In case the Mt. Hood Land & Water Company shall faithfully and efficiently carry into execution the work above specified, then the company shall continue construction work with diligence and complete the same and apply the water to a beneficial use on or before June 1, 1938, so that there may be reclaimed under the system approximately 8000 acres of land. At the expiration of either of the different periods of time herein mentioned for construction work the state engineer is authorized to take proof of the work done by the company and upon good cause therefor being shown to extend the time or periods for such work and report to the circuit court, showing the extent to which such system and appropriation has been completed.''

After this second extension of time had been granted, both the Wapinitia Irrigation Company and the Mt. Hood Land and Water Company wholly failed to comply with the terms and conditions on which the extension had been made and, in the meantime, all the rights and interests of the Mt. Hood Land and Water Company passed to and became vested in the Wapinitia Water Company, hereinafter referred to as the applicant. Nor did the applicant perform any work and the water users were compelled, at their own expense, to clean out the canal and ditch leading from the point of diversion to their premises and to divert such water as they were able to obtain to their premises and, during all said time, were unable to obtain the amount of water for which they had contracted and paid.

At the time of the expiration of the two-year period mentioned in the decree last referred to, the Wapinitia Water Company, the applicant herein, filed a written application before the state engineer for a further extension of time. To this application the water users

filed objections and, after a public hearing before the state engineer at which all interested parties were present, the application was denied and the matter was then submitted to the circuit court for Wasco county upon the evidence offered at the hearing and upon the report of the state engineer. In his report, the state engineer, among other things, said:

"The contracts referred to are those entered into by and between the Wapinitia Irrigation Company, predecessor to the Mt. Hood Land & Water Company, the latter being a predecessor to the now Wapinitia Water Company. Under the provisions of the contracts the company was obligated to deliver to the water users between May 15 and September 15 of each year a total of 2163.21 acre-feet of water. It is also apparent from the court's decree on mandate that whatever work was required to put the company's irrigation system in condition to deliver the water contracted should be done under the supervision of the State Engineer. No plans were ever submitted, nor was notice ever served upon the State Engineer by the company or anyone else which would indicate that the required work was to be done.

"It will be noted that nowhere in the application it is contended that any work was done by the company or anyone else toward putting its irrigation system in condition to deliver the water to the contract holders. The concluding paragraph of the application, however, urges that the time for completion of the construction work and application of the proposed use be extended to October 1, 1936.

"Water for the lands included within the project is obtained from Clear Creek, a tributary of White River, and Frog Creek, a tributary of Clear Creek. In the fall of 1929 there was constructed a reservoir at Clear Lake, it being the intention to supplement the direct flow from this source. Up to date, however, no water has been stored and made available for the lands entitled to receive water for the reason that the company has failed to make proper arrangements with the Forestry De-

partment in regard to clearing of the reservoir site and the construction of a road to replace the present one which would be flooded were the gates in the dam closed.

"The water is conveyed to the place of use by means of the main canal, known as the Wapinitia Canal, and a net work of laterals leading therefrom. The first question for determination is whether or not the distribution system has the capacity to deliver the water contracted.

"On May 16, 1934, E. K. Humphrey, Assistant to the State Engineer made an examination of the Flinn and Kelly laterals to determine the capacity of the same. Records in the State Engineer's office show that the company is obligated under contracts to supply one acre-foot of water to each of 357 acres of land or 357 acre-feet through the Flinn lateral in 123 days. This quantity is equivalent to a mean continuous flow of 1.64 second-feet for 123 days, allowing 10.9 per cent for transportation loss. Since the capacity of the lateral was taxed when carrying 1.10 second-feet, it is evident that it could not at the time inspected transport the 1.64 second-feet, an increase of 49 per cent, necessary to fulfill the terms of the contract.

"A determination of the capacity of the Kelly lateral indicated it would only carry 0.72 second-feet of water, while its required capacity to fulfill the contracts would amount to 1.28 second-feet of continuous flow for a period of 123 days in order to irrigate 311 acres of land. (See report on the water supply for lands served by the Wapinitia Water Company, p. 34-39).

"It is apparent from the foregoing that in respect to the laterals reported on that they have not the capacity to deliver the water contracted and in this respect the company has failed to meet the requirements of the court's decree of February 28, 1933.

"The next question for determination is as to whether or not there is sufficient water available without storage to deliver 2163.21 acre-feet of water during each irrigation season in accordance with the contracts. In considering this question it must be remembered that

the source of water supply is from tributaries of White River, the water rights of such stream system being adjudicated during the year of 1923. Among other rights awarded as a result of the adjudication, the Pacific Power and Light Company, having its power plant near the mouth of White River and many miles downstream from where the company diverts its water, was decreed a right to the use of 250 second-feet of water with date of priority of 1901, two years earlier in time than the decreed rights of the predecessors of the Wapinitia Water Company. As a consequence water from direct flow for the lands included within the company's project and to which water was sold under contract is only available after satisfying prior rights.

"According to the tabulation it is shown that the average number of days each year during the 16-year period between May 15 and September 15 (123 days) when the flow of White River exceeded 250 second-feet, the quantity decreed to the Pacific Power and Light Company, was 41, and the average number of days each year the entire supply for the lands would have been required from storage was 82. The table further shows that during the past 16 years the 1934 supply was the lowest of record and that no water from direct flow would be available for the lands had the power company demanded its decreed rights. The year with the next lowest quantity available from direct flow was 1926 when there would have been two days' flow available from direct flow during the irrigation season. Considering the year of 1933, which the tabulation indicates to be the longest period that direct flow would be available, the record shows that water from storage would be required for 55 days. No testimony or records were introduced by the company which could be considered as authentic in this connection. It is evident that the company, if it must depend upon delivery of direct flow water, cannot fulfill the contracts for water.

"It being apparent that the company must store water in the Clear Lake Reservoir before it could satisfy the outstanding contracts with the water users,

there is no doubt but what the court by its decree of February 28, 1933, intended that the reservoir be put in proper condition to meet this requirement. Nothing has been done in this respect since the dam was constructed. The company filed an application with the Reconstruction Finance Corporation for the purpose of securing a loan of $50,000, the proceeds to be used in enlarging its distribution system and meeting the requirements of the Forestry Department in clearing the reservoir site and relocating the road. It was admitted by the company at the hearing that it had no apparent source of financing other than the government. That a loan might be obtained from this source is not likely in view of a letter addressed to Mr. Robt. Ellinwood by C. C. Hockley, Acting State Director Public Works Administration, dated June 21, 1935, in which it was advised that loans could not be made to other than non-federal public bodies. If the estimate of the Forestry Department is near correct as to the cost of preparing the reservoir to store water, the loan would not be sufficient for this purpose alone. Then again it was not contemplated to raise the present height of the dam, and as a consequence its present possible capacity of 4,014 acre-feet would be increased thereby making available for sale additional water in any sizable quantity.

"In view of the foregoing, the State Engineer is of the opinion that neither the Wapinitia Water Company nor any of its predecessors have complied with the decree of the court entered February 28, 1933, and therefore is not in position to deliver nor has it delivered the quantity of water heretofore sold under contract to the water users, and for the reasons herein stated deny said company any further extension of time within which to complete its projects."

To this report, the applicant, Wapinitia Water Company, filed exceptions and, upon hearing thereof, these exceptions were overruled and a decree was entered upholding the findings of the state engineer and affirming his action in denying any further ex-

tension of time to the Wapinitia Water Company. From this decree that company has appealed.

After a careful consideration of the evidence offered at the hearing and of the findings of the state engineer, we are convinced that the applicant has wholly failed to show any sufficient ground entitling it to any further extension of time in perfecting its proposed appropriation of additional water by storage. The reservoir in which such waters are proposed to be stored is shown by the state engineer to have been constructed in the fall of 1929, but no water has been stored therein because applicant and its predecessors in interest have been unable to obtain from the Forestry Department permission to flood the lands covered by the reservoir with stored water, the objection upon the part of the government to such storage being that one of its forestry roads would be submerged and another road in place thereof would have to be constructed and also that, by the storage of water, a large number of trees within the forest would be destroyed. In addition thereto, it is shown that neither the applicant nor either of its predecessors in interest have had any moneys available to meet the expenses that would be required in the purchase of the trees and in the building of the road, and, during all the time intervening, the water users, who had contracted and paid for the use of the water upon their lands, have been deprived of the quantity of water for which they had contracted and paid.

Under section 47-506, Oregon Code 1930, where application is made to the state engineer for time in which to construct any proposed irrigation works, the work shall begin within one year from the date of approval of the application and shall thereafter be prosecuted with reasonable diligence and be completed

within a reasonable time as fixed in the permit not to exceed five years from the date of such approval, except for a good cause shown the state engineer may allow an extension of time beyond the five-year period. Section 47-801, Oregon Code 1930, also provides:

"Whenever the owner of a permit to appropriate the public waters of the state of Oregon shall fail to commence actual construction work within the time required by law, or having commenced construction work as required by law, shall fail or neglect to prosecute work thereon with reasonable diligence, or shall fail to complete such construction work within the time required by law, or as fixed in such permit, or within such further time as may be allowed therefor, as provided in section 47-506, Oregon Code, or having completed construction work, shall fail or neglect to apply the water to beneficial use within the time fixed in such permit, the state engineer may cancel such permit on the records in his office as hereinafter provided; * * *".

■ There was no cause shown by this applicant to entitle it to the extension of time applied for. For that reason, the action of the state engineer and of the circuit court in refusing to grant such extension should be and is affirmed.

We think, however, that the decree of the court below should be modified in the following particulars: Among other things, it provides:

"That all of the rights, inchoate or otherwise in and to the waters of Clear Creek and Frog Creek, tributaries of White River, a tributary of Deschutes River, heretofore adjudged to and held for the Wapinitia Irrigation Company, a corporation, and to or for its successor, the Mt. Hood Land & Water Company, a corporation, and to or for its successors, Wapinitia Water Company, a corporation, and all rights in said water which have heretofore been, now are, or may ever be claimed by any persons or corporations holding by, through or under said corporations or either of them,

are hereby forever annulled, cancelled and held for naught, excepting only the rights therein of the individual water users as appurtenant to their respective lands, and their lawful successors in interest therein as in said supplemental decree, dated January 14, 1932, and therein particularly specified, adjudged, decreed and described.

"That for the purposes of procuring, distributing and using the waters of Clear Creek and Frog Creek by and for the water users in accordance with this second supplemental decree, said water users are hereby granted and decreed an easement and right to use any and all rights of way, reservoirs, reservoir sites, flumes and ditches of every kind and description heretofore or now used by the Wapinitia Irrigation Company and/or the Mt. Hood Land & Water Company and/or the Wapinitia Water Company and/or the said water users themselves by and through their said operating corporation, the water users corporation of Juniper Flat, to the full extent of the usefulness of said rights of way, reservoirs, reservoir sites, flumes and ditches as the same have heretofore existed or do now exist or may be maintained or improved and enlarged for the purpose of diverting, distributing and availing themselves of and using the water rights hereby decreed.

"That said supplemental decree dated January 14, 1932, in the above entitled cause and on said date duly recorded in volume 2 at pages 521 et seq. of the Journal of the above entitled court, be and it is hereby adjudged, declared and decreed to be restored, renewed and reinstated as the final decree herein, excepting only in so far as said supplemental decree dated January 14, 1932, may be inconsistent with this second supplemental and final decree. Notice of appeal was given by the Wapinitia Water Company in open court at the time of the rendition of this decree."

These provisions are in the language of the decree appealed from in *In re Waters of White River,* supra, and are subject to the same objections now as were pointed out in the opinion of this court in that case and

are invalid for the same reasons. This was a controversy between the Wapinitia Water Company and its water users. The sole question in issue was: Should an extension of time be granted to the company under the showing then made? The names and number of the water users are not disclosed by the record, nor is any description contained in the record of the lands to which these waters would be appurtenant if the extension was granted. Neither does the evidence show with whom the contracts had been made, nor what the terms of such contracts were. In respect to those matters, both the court below and this court are in the dark. Consequently, in these proceedings and upon this evidence, the court can make no determination of the rights of either party and any attempt to do so upon the part of the court below was wholly unauthorized and without jurisdiction. If the water users, by reason of their contracts and the failure of the parties with whom they have contracted or this applicant to fulfill the terms of the contracts, are entitled to damages or to equitable relief, the courts are open and authorized to grant such relief in a proper proceeding brought for that purpose. But in these proceedings, the court below as well as this court are powerless to grant any relief in respect to any such matters.

For these reasons, the decree appealed from will be modified and the objectionable features referred to will be vacated and set aside. In all other respects, the decree appealed from is affirmed.

BELT and KELLY, JJ., not sitting.