MAX D. HICKMAN, APPELLEE AND CROSS-APPELLANT, V. LOUP RIVER PUBLIC POWER DISTRICT, APPELLANT AND CROSS-APPELLEE, MIDDLE LOUP PUBLIC POWER AND IRRIGATION DISTRICT ET AL., INTERVENERS-APPELLEES AND CROSS-APPELLANTS.

126 N. W. 2d 404

Filed February 21, 1964. No. 35555.

Neighbors, Danielson & Van Steenberg and Walter, Albert, Leininger & Grant, for appellant.

Monsky, Grodinsky, Good & Cohen, Hotz, Hotz & Taylor, John H. Evans, and Leo F. Clinch, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal from an order of the Director of the Department of Water Resources of the State of Nebraska in a proceeding brought by the petitioner Max D. Hickman to secure the cancellation and annulment of the appropriation rights of the respondent Loup River Public Power District arising out of application No. 2287 for 3,500 cubic feet of water per second of time from the Loup River for the development of power with a priority date of September 15, 1932, and application No. 2573 for an additional power head of 18 feet in using the water appropriated by application No. 2287, which was granted on April 21, 1936. Petitions of intervention were filed by the Middle Loup Public Power and Irrigation District, North Loup River Public Power and Irrigation District, and Paul H. Dean, receiver for North Loup River Public Power and Irrigation District. The final order of the Director of the Department of Water

Resources determined that the maximum amount of the water appropriation under application No. 2287 by virtue of the beneficial use made of water under its priority on or before August 24, 1937, was 506 cubic feet of water per second of time for the generation of hydroelectric power under a total head of water of 126 feet. The Loup River Public Power District has appealed to this court from the final order of the Director of the Department of Water Resources entered in the case on December 28, 1962.

We shall hereafter refer to the petitioner as Hickman, to the respondent Loup River Public Power District as Loup District, to the North Loup River Public Power and Irrigation District as North Loup District, to the Middle Loup Public Power and Irrigation District as Middle Loup District, and to the Department of Water Resources of the State of Nebraska and its predecessors as Department. The Director of the Department of Water Resources will be designated as director.

The case was previously before this court and the relationship of each of the parties to the litigation is set out in the opinion in that case. Hickman v. Loup River Public Power Dist., 173 Neb. 428, 113 N. W. 2d 617. We shall only refer to their relationship briefly in considering the issues on their merits on the present appeal.

Hickman is the owner of an appropriation of the public waters of the Middle Loup River for the purpose of irrigation for 1.28 cubic feet per second of time with a priority date of October 23, 1939, which is junior to the claimed appropriation rights of Loup District. He brings the proceeding as a class action on behalf of himself and all junior appropriators of water for irrigation purposes from the Loup River and its tributaries, whose points of diversion are upstream from the diversion point of the Loup District and whose priority dates are subsequent to September 15, 1932, the claimed priority date of Loup District.

The interveners, although barred by section 46-238, R.

R. S. 1943, from bringing action for the cancellation and annulment of the appropriation right of Loup District because of the 1-year limitation therein contained, were permitted to intervene because of the reasons stated in the former appeal. The primary issue raised is the validity of Loup District's appropriation right and, if valid, the extent thereof.

An application for the appropriation of the public waters of the Loup River for the purpose of generating power with a priority date of September 15, 1932, and with a diversion rate of 3,500 cubic feet per second of time was duly filed with the Department on behalf of Loup District. A corrected application was subsequently filed on June 12, 1933. On March 22, 1934, the application was granted. The terms and conditions of the appropriation as contained in the application are as follows: The amount of the appropriation is 3,500 cubic feet per second of time with a priority date of September 15, 1932. The capacity of the plant was to be 49,500 horsepower. The maximum head or fall that it is practical to maintain at the average low water stage of the stream is 126 feet. The plant was to be completed on or before June 30, 1935, and would be put in operation by that date. The order of March 22, 1934, approving the application provided that the water appropriated shall be used for the purpose of developing power and unless unforeseen accident or delay beyond applicant's control shall intervene, (a) excavation or construction shall begin on or before August 24, 1934, (b) applicant shall proceed with diligence and prosecute the work of construction continuously to completion, the period for completion to expire on August 24, 1937, and (c) the time for applying the water to the beneficial use indicated is August 24, 1937. The appropriation was subject to described appropriations of Middle Loup District and North Loup District, about which there is no issue in this case. A lease for the public waters was required to be filed with the Department requiring the payment to the state

of $10 for each one hundred horsepower for all water appropriated. The order lastly provided: "The breach of any of the conditions herein recited shall be ground for cancellation and revocation of this water right in the manner and upon the terms and conditions provided by law, and in the absence of such law, then such cancellation or revocation shall be declared and become effective following the procedural requirements of Section 81-6309 of the Compiled Statutes of Nebraska, 1929."

Section 81-6309, Comp. St. 1929, provided the method by which the Department, after notice and hearing, can forfeit and annul an appropriation of water not being used for some beneficial or useful purpose, or having been so used at one time has ceased to be used for such, purpose for more than three years. No proceeding under this statute was ever instituted by the Department to forfeit, annul, or limit the appropriation of Loup District. It seems evident that under this statute the appropriation right, if once completed, remains valid unless and until the Department, by the procedure therein set out, enters its order forfeiting and annulling the appropriative right in whole or in part. Section 81-6309, Comp. St. 1929, as amended, now appears as sections 46-229 to 46-229.05, R. R. S. 1943.

The evidence shows that an application for an extension of time to complete the construction of the project was filed on August 20, 1937, and a further application in lieu thereof on November 15, 1937. On November 20, 1937, the extension was granted by the Department fixing the time for completing the construction under applications Nos. 2287 and 2573 as July 1, 1938. It is one of the contentions of Hickman and the interveners that the construction work was not completed nor the water put to a beneficial use on or before August 24, 1937, the original completion date, nor was the construction work completed and the appropriated water put to beneficial use on or before July 1, 1938, the extended date, if

the order of extension was valid, which Hickman and interveners deny.

It is the contention of Loup District that the terms of the grant of the appropriation right were complied with and that the appropriation of water for power purposes has become absolute and final. The Loup District has asserted the additional defenses of laches, estoppel, and the statute of limitations. It is upon the issues thus raised that the case must be determined.

The water appropriated under application No. 2287 is diverted on the north bank of the Loup River approximately 4 or 5 miles west of Genoa, Nebraska, at which point its diversion works have been constructed. The water is there diverted into a supply canal having a carrying capacity of 3,500 cubic feet per second of time. Approximately 2 miles from the diversion works a desilting basin about 10,000 feet in length has been constructed in the canal. At the lower end of the desilting basin the water passes over a skimming weir which has for its purpose the holding of sand from the river in the desilting basin. An electrically operated power dredge cleans the sand from the desilting basin and dumps it into a sand disposal facility. Fourteen miles down the canal from the diversion point the Monroe generating plant is constructed. After going through or by-passing the Monroe power plant, the water continues down the canal a distance of 17 miles to the Columbus power plant. Two miles or so west of the Columbus power plant the water passes through the Lake Babcock regulating reservoir which covers about 1,200 acres. From the Columbus power plant the water is returned to the Loup River by a tailrace which is approximately 6 miles in length. The Monroe plant is a three-turbine, three-generator plant capable of using a maximum head of water of 29 feet 9 inches. The Columbus plant is likewise a three-turbine, three-generator plant having the capacity to use a maximum head of water of 113 feet 8 inches. The capacity of the Monroe plant is 14,100 horse-

power, while that of the Columbus plant is 49,500 horse-power.

The record shows that the appropriation order on application No. 2287 permits a total head of water of 126 feet. The order of the Department on application No. 2573, authorizing the construction of the Monroe plant without any additional appropriation of water over that granted on application No. 2287, permitted an additional head of water in the amount of 18 feet. The total head of water authorized under applications Nos. 2287 and 2573 was therefore 144 feet.

The cost of construction of the 26-mile supply canal; the head works at the point of diversion; the desilting basin, skimming weir, and dredge; the regulating reservoir known as Lake Babcock; the plants at Monroe and Columbus, including the buildings, turbines, and generating equipment; and the substations adjacent to the power plants were financed by a loan of $6,847,000 by the Public Works Administration of the federal government and a grant of $1,850,000 by the same governmental agency. A second loan in the amount of $1,273,000 and an additional grant of $856,000 were subsequently secured from the Public Works Administration, which were used in part for the construction of transmission lines from Columbus to Lincoln, Fremont, Norfolk, and to a point of interconnection with the Polk County Rural Power District. These loans and grants total $10,826,000. It is stipulated that the Loup District expended $13,000,-000 for construction prior to 1957, $9,295,000 of which remains unpaid.

The Loup District has been operating the Monroe and Columbus plants for many years. The amount of electric enegry generated has fluctuated from year to year. In 1961 the Columbus plant produced 126,069,600 kilowatt hours and the Monroe plant produced 30,293,700 kilowatt hours during the same year, a total of 156,363,-300 kilowatt hours. The peak production year was 1951 when the Columbus plant produced 131,243,000 kilowatt

hours and the Monroe plant 33,281,330, a total of 164,-524,330 kilowatt hours. The yearly fluctuation can be accounted for on several grounds such as adverse weather conditions that would reduce the natural flow of the stream, unauthorized diversions above Loup District's diversion works, agreements for compensation for interference with its appropriation in lieu of condemnation, and hesitancy in contracting for the sale of the maximum capacity of its plants in view of the uncertainty of a maximum source of production. The evidence shows fluctuations in production over the years, a result that is reasonably to be expected.

The record further shows that Loup District entered into a lease with the state for the use of the public waters of the state for power purposes within the limit of its appropriation as required by section 81-6318, Comp. St. 1929, now section 46-236, R. R. S. 1943. The Department has demanded and the Loup District has paid the sum of $5,011.30 each year beginning with 1937 on application No. 2287, and the sum of $715.90 each year since 1937 on application No. 2573. The formula by which these amounts were calculated includes the rate of diversion as 3,500 cubic feet per second of time and a head of water of 144 feet. The Department did not collect for the year 1936, for the reasons given by the Chief of the Bureau of Irrigation, Water Power, and Drainage in a letter to the State Engineer under date of February 16, 1938, in which it is stated: "These figures are based on 3500 second-feet of water appropriated, measured at the diversion point, and a head of 144 second-feet. Charges for royalties for 1936 were omitted for the reason that no water was diverted from the Loup River by the Loup River Public Power District under Application 2287, for power. The water diverted in 1936 was not by virtue of any appropriation or permit from the State. It was taken and used to soak up the canal and Babcock Lake through tolerance on the part of the State."

The progress made in the construction of the project

was testified to by Paul M. Peterson, chief accountant and deputy treasurer of Loup District. He testified to records, most of which he personally made, which were required by the Public Works Administration and Loup District. The following is a summary of his testimony: Construction was commenced on July 31, 1934. Lake Babcock regulating reservoir was completed on September 8, 1936. The supply canal was completed on September 12, 1936. The tailrace was completed on September 30, 1936. The diversion works were completed on December 5, 1936. The generators and turbines were completely installed on March 31, 1937. The Monroe generating plant was completed on August 24, 1937. The electric power dredge was completed in late August 1937, and after a period of testing was certified as completed on October 31, 1937. The Columbus generating plant was completed on December 11, 1937. All electrical equipment was completely installed on March 15, 1938. Loup District entered into an agreement with Platte Valley Public Power and Irrigation District for the sale, interchange, and purchase of electrical energy on May 28, 1937. The transmission line to facilitate this agreement was built by the Platte Valley Public Power and Irrigation District and was completed in the late fall of 1936. Transmission lines from Columbus to Fremont, Lincoln, Norfolk, and the Polk County Rural Power District were completed by the Loup District on July 1, 1938, August 10, 1938, August 31, 1938, and May 10, 1938, respectively. Substations at Fremont, Lincoln, and Norfolk were completed on July 8, 1938, August 31, 1938, and August 31, 1938, respectively. Loup District commenced the diversion of water through its headgates on December 2, 1936, for the seasoning of the canal. Electrical energy was first generated at the Monroe plant on March 5, 1937, and at the Columbus plant on August 21, 1937. Continuous generation of electrical energy at the Monroe plant was commenced on August 6, 1937, and at the Columbus plant on October 20, 1937. The generation of

electricity was used for some time thereafter for station use and in dredging operations at the desilting basin. A part of the energy produced from October 20, 1937, to July 1, 1938, was sold to Platte Valley Public Power and Irrigation District and the Polk County Rural Power District. Electrical energy has been continuously produced by the Columbus and Monroe hydroelectric plants since July 1, 1938, and Loup District presently sells to Consumers Public Power District, 27 rural public power districts and membership cooperatives, 8 municipalities, and others such as ammunition depots and other governmental agencies.

The evidence shows that the Lake Babcock regulating reservoir enables the Columbus plant to generate electrical energy in excess of the amount carried in the canal above Lake Babcock for 3 or 4 hours because of its storage capacity. This enables the Columbus plant to pick up peak loads for 3 or 4-hour periods. During the periods when the demand is low the Columbus plant is able to relieve the thermal plants operated by Loup District and thereby reduce fuel costs in those plants. The Monroe plant has no regulating reservoir and no ability to increase its production during peak periods. Since the water used at Monroe is much less than the capacity of the supply canal, its production is limited by its generating capacity and not by its water supply, while the opposite is true within limits at the Columbus plant.

It is here contended by Hickman and the interveners that Loup District failed to construct its facility and put its appropriated water to public use on or before August 24, 1937. It is also contended that the purported extension granted by the Department to July 1, 1938, was unauthorized and void. It is further contended that if the extension was valid, Loup District failed to put its appropriated water to designated use within the extended time. It is necessary therefore to determine the date when construction was required to be completed and the

water put to the designated use. This in turn requires a determination of the validity of the order of the Department extending the completion date from August 24, 1937, to July 1, 1938, and if unauthorized, the effect thereof on the appropriation rights of Loup District under the existing facts and circumstances.

On August 20, 1937, Loup District filed an application for an extention of time of its completion date. On November 15, 1937, it filed a second application in lieu of the first application. The only change in the two appears to be the addition of a verification to the original application. The extension of time was granted by the Department on November 20, 1937. It is contended that the application was made out of time. In Pool v. Utah County Light & Power Co., 36 Utah 508, 105 P. 289, the court in passing on this question held that the state engineer could extend the time if not beyond the final limit fixed by the statute, although the application therefor is made after the time first fixed by him has expired. The applicable statute in the present case, section 81-6313, Comp. St. 1929, now section 46-238, R. R. S. 1943, provided that the completion date shall be fixed by the Department in the original appropriation and shall be final notwithstanding the ordinary delays and casualties that must be expected and guarded against, but, although the construction must proceed vigorously, diligently, and uninterruptedly to completion, such requirement is limited by the words "unless temporarily interrupted by some unavoidable and natural cause." The quoted words have been interpreted by this court to empower the Department to extend the completion date where the delay is the result of an unavoidable and natural cause. In re Application of Babson, 105 Neb. 317, 180 N. W. 562; North Loup River Public Power & Irr. Dist. v. Loup River Public Power Dist., 162 Neb. 22, 74 N. W. 2d 863. The effect of the statute is to fix the completion date as the designated date contained in the Department's order approving the application, plus any delays resulting from

unavoidable and natural causes. Since the Department, then as now, is given jurisdiction over all matters pertaining to water rights for irrigation, power, or other useful purposes, it is for the Department to determine if delays resulted from unavoidable and natural causes. While the statute does not require the filing of an application for an extension of time when construction is temporarily interrupted by some unavoidable and natural cause, this court in the cases above cited has recognized a written application for an extension of time as a means of invoking the powers of the Department in administering the statute. The order granting the extension of time in the present case states that upon examination of the petition for extension and the records on file regarding the progress and development of the project, it is ordered that the completion date be extended to July 1, 1938. This order is clothed with the presumption of regularity and validity. There is evidence in the record that after a proper installation of the turbines and generators in the Columbus plant, a settling of the concrete caused a misalignment of the vertical shafts between the turbine and the generator on each of the three units. Since the turbines and generators, and the shafts which transmit power from the turbines to the generators, all operate at high speeds, many weeks were required to correct and test the equipment before it could be operated under load. Loup District was advised by its consulting engineers that if these units were used before the corrections were made they would assume no responsibility for resulting damage. The delay resulting was without fault on the part of the Loup District and came within the statute authorizing additional time for temporary interruptions by some unavoidable and natural cause. We must assume that the Department was aware of conditions on this development from progress reports on file and the reports of its field representatives. While the regularity of the extension order must be presumed, the evidence in the record does dis-

close that adequate grounds actually existed which would sustain its issuance. We are of the opinion that the extension of time to July 1, 1938, for the completion of the construction of the project was authorized and valid, and that the director was in error in holding the extension to be void.

It is the contention of Loup District that the approval of application No. 2287 by the Department was a conditional grant in praesenti of 3,500 cubic feet of water per second of time subject to the conditions imposed which is divested for breach of condition if, but only if, the person having the power chooses to exercise it. It is then urged that as the Department has not chosen to exercise its authority to terminate the grant for breach of condition, there could be no forfeiture without judicial or legislative action. Admittedly no such action has been taken to forfeit the appropriation right and it is therefore contended by Loup District that, after construction and many years of operation, the right to forfeit is waived and lost. It is contended by Hickman and the interveners that the order approving the application for an appropriative right was contingent and subject to conditions precedent. It is asserted that the grant being thus limited, there is no vesting of a right until the limitations and conditions precedent have been met within the time specified. We do not deem it necessary to engage in a discussion of the nature of the appropriative right as to being a grant on condition subsequent or a limited grant on condition precedent, in view of our subsequent holding herein that all conditions and limitations contained in the orders approving applications Nos. 2287 and 2573 have been met within the prescribed time.

We think the evidence in this case previously recited in this opinion establishes that construction of the power facility, including the diversion works, supply canal, tailrace, power stations, and generating equipment, was completed on or before July 1, 1938, the extended date for the completion of such construction. It is true that due to

the lapse of time the records of Loup District must be relied upon to a great extent in determining this question. Hickman and the interveners rely largely upon alleged admissions by officers of Loup District to support their contention that construction was not completed on or before July 1, 1938. Most of the admissions go to the question as to whether or not construction was complete and the appropriated water put to a public use prior to August 24, 1937. These admissions lose their import with the upholding of the validity of the extension of time fixing the completion date as July 1, 1938. The evidence also shows a report by Loup District that construction in the amount of $496,227.34 remained to be performed on July 1, 1938, and $474,856.61 remained to be performed as of August 1, 1938. Hickman and the interveners made no attempt to show the nature of the construction remaining to be performed on and after July 1, 1938. The evidence of Loup District is that the construction remaining to to be performed on or after July 1, 1938, was transmission lines and other work incidental only to the production of power. The evidence of Hickman and the interveners will not sustain a finding that construction on the project was not completed prior to July 1, 1938, in accordance with the requirements of Loup District's appropriative grant and the plans and specifications submitted to and approved by the Department.

The finding that the construction was completed within the prescribed completion date requires the determination of a second question of equal importance, to wit, were the waters appropriated by application No. 2287 put to beneficial use within the time specified by law and the conditions of the grant? The question as to when an appropriation of the water of a stream for power purposes is put to beneficial use appears to present a case of first impression in this state. Its consideration requires an examination of the applicable constitutional and statutory provisions and the public policy of the state as revealed therein.

The Constitution declares the necessity of water for domestic use and for irrigation purposes to be a natural want. Art. XV, § 4, Constitution of Nebraska. It is the public policy of the state to maintain a rigid economy in the use of the public waters of the state. One of the primary purposes of the state in providing for its control and administration of public waters is to avoid waste and to secure the greatest benefit possible from the water available for appropriation for public use. The application of water to a beneficial use operates as a condition subsequent which in fact fixes the extent of the right originally acquired. State v. Birdwood Irr. Dist., 154 Neb. 52, 46 N. W. 2d 884.

The Department is given exclusive jurisdiction over all matters pertaining to water rights for irrigation, power, or other useful purposes. It is charged with the duty of administering the waters of streams in accordance with adjudicated appropriations of water in order of priority. In the granting of an application for the appropriation of water from a stream, the Department must fix the terms thereof. The statute requires that within 6 months from the grant of an appropriation right the applicant must commence the excavation or construction of the works in which it is intended to divert the water and that the applicant shall vigorously, diligently, and uninterruptedly prosecute such work to completion unless temporarily interrupted by some unavoidable and natural cause. These provisions require a prompt and economical use of appropriated water. An appropriator will not be permitted to retain the right to water which he does not put to beneficial use and thus deprive others of its benefits. Compliance with the conditions of the grant are enforced to require a prompt use of water or the loss of the right for the benefit of others.

Hickman and the interveners contend that the rule applied in North Loup River Public Power & Irr. Dist. v. Loup River Public Power Dist., 162 Neb. 22, 74 N. W. 2d 863, is applicable here and should be applied to de-

feat the appropriation right of Loup District for failure to put its appropriation of water to a beneficial use within the time specified. The cited case is one involving an appropriation of water for irrigation purposes. Such an appropriation right requires the fixing of the rate of diversion, the volume of water to be applied to the land, the description of the specific lands to which water is to be applied, and the application of water to the land within the time fixed. The statute then in existence did not authorize an extension of time. It did in effect provide for an extension for temporary interruptions of construction by some unavoidable and natural cause. There was no evidence warranting an extension on such ground in that case and consequently the application of water to the land described in the application had to be made within the time fixed. Water was not so applied to all of the described lands. The effect of our opinion was to reduce the appropriation of water to the amount used to irrigate the lands in the district to which water had been applied within the time fixed. In the case of an appropriation for irrigation, the beneficial use required is spelled out in the application and grant. Beneficial use in such a case culminates when water has been applied to land described in the application. The appropriation right is therefore limited to the lands described in the application to which water was beneficially applied within the time prescribed by the order approving the application.

On the other hand, an appropriation of water for power purposes requires the fixing of the rate of diversion only. There are no requirements for the fixing of the volume of water diverted under a power appropriation. There is no spelling out of any act beyond the completion of construction that must be performed to constitute putting appropriated waters to beneficial use, as in the case of an irrigation appropriation. The inherent differences in the two uses and the differences in statutory requirements necessitate a difference in result in determining

what constitutes putting to a beneficial use in the two instances.

The applicable statute, section 81-6316, Comp. St. 1929, now section 46-233, R. R. S. 1943, provided in part: "The application shall set forth the name and post-office address of the applicant, the source from which said appropriation shall be made, the amount thereof as near as may be, the location of any proposed work in connection therewith, the time required for its completion, which shall embrace the period required for the construction of the ditches thereon, the time at which the application of the water for the beneficial purposes shall be made, which shall be limited to the time required for the completion of the work when prosecuted with diligence, the purpose for which water is to be applied, and, if for irrigation, a description of the land to be irrigated thereby, and the amount thereof and any additional facts which may be required by the department of public works." A second applicable statute, section 81-6318, Comp. St. 1929, now section 46-234, R. R. S. 1943, provided in part: "In case of an application for an appropriation of water for the development of water power, the department shall promptly act upon such application *and limit the time within which such appropriation shall be perfected to the period within which the proposed power project can be completed by uninterrupted and expeditious construction.*" (Emphasis supplied.) The emphasized portion of the statute clearly states that the appropriation of water is completed when construction is completed.

It will be further noted that there is no requirement as to any amount of power to be produced to constitute beneficial use within the meaning of the statute; nor is there any requirement that a sale of electrical energy be had to the extent of the capacity of the facilities or any part thereof; nor is there any requirement that transmission lines be built and energized in whole or in part to establish the putting of the facility to a bene-

ficial purpose or use. In fact, there is no equivalent in the completion of a water power appropriation to the requirement in an irrigation appropriation that the land to be watered be described and water applied in beneficial quantities within the completion date. Considering the differences in the statutes as they relate to power and irrigation appropriations and the inherent difference in the purposes of each, we conclude that an appropriation for power purposes is perfected when the necessary facilities are constructed and the plants placed in operation. Unless this construction of the statutes be correct, the development of water power would contain elements of risk and uncertainty that would defeat the purposes of the controlling statutes.

Hickman and the interveners consider the problems involved here as though they relate to an appropriation of water to a body of specifically described lands. This is not a question involving any such situation. The problem here is the determination of the rule to be applied to an appropriator whose purpose is the generation of hydroelectric power for sale to the public. There is ample reason for holding in accordance with the statute that the appropriation is complete when the works are constructed and some water is diverted and converted into hydroelectrical energy. The law of this case is that the appropriated water shall be put to beneficial use on or before July 1, 1938. There is no statutory provision as to the amount that shall be put to such use. As stated in City & County of Denver v. Sheriff, 105 Colo. 193, 96 P. 2d 836: "Courts are not to shut their eyes to the realities of business life."

In a somewhat similar case involving an appropriation of water for sale to others, the Montana court stated as follows: " 'If the intended appropriator constructs the works and appliances necessary for the diversion of the water and the carrying of it to points where its use is desirable and profitable, and has actually carried it there, or is ready and willing to do so, and offers it to

all persons who are willing to pay for its use, we apprehend that his appropriation is complete, though the persons to whom it is thus offered refuse to receive or use it. They certainly cannot thus defeat the rights of the diverter.' To deny the right of a public service corporation to make an appropriation independently of its present or future customers, and to have a definite time fixed at which its right attaches, would be to discourage the formation of such corporations and greatly retard the reclamation of arid lands in localities where the magnitude of the undertaking is too great for individual enterprise, if, indeed, it would not defeat the object and purpose of the United States in its great reclamation projects, * * *. Respectable authority can be found holding contrary to our view; but upon a consideration of our statutes, the history of the law of appropriation, and the public policy of this state, we base our conclusion that, as to a public service corporation, its appropriation is complete when it has fully complied with the statute and has its distributing system completed and is ready and willing to deliver water to users upon demand, and offers to do so." Bailey v. Tintinger, 45 Mont. 154, 122 P. 575.

This conclusion is indicated in Kearney Water & Electric Powers Co. v. Alfalfa Irr. Dist., 97 Neb. 139, 149 N. W. 363, wherein it is stated: "The state board in this case was not called upon to grant water for power. Its duty was to determine the validity and extent of an alleged completed appropriation. Under the present statute appropriations may be abandoned, and the plaintiff's appropriation for power purposes should be regarded as abandoned, except so far as it had equipped itself to utilize it for that purpose when the act of 1889 took effect, or did so equip itself within a reasonable time thereafter."

Since the appropriation was complete on July 1, 1938, and no issue of abandonment or nonuser thereafter is made, the appropriation remains valid until the issue

of abandonment or nonuser is questioned by a proper proceeding commenced under sections 46-229 to 46-229.05, R. R. S. 1943. Loup River Public Power Dist. v. North Loup River Public Power & Irr. Dist., 142 Neb. 141, 5 N. W. 2d 240. It is fundamental that the limitations on Loup District's appropriative right restrict that district only and do not amount to a grant to Hickman or the interveners. Loup District derives its rights solely from its grant and, the grant having a priority as to time to the rights of Hickman and interveners, all its rights growing out of applications Nos. 2287 and 2573 are superior to those belonging to Hickman and interveners.

This conclusion appears to have been the one adopted by the Department since 1937. In 1937 the Department entered into leases with Loup District for the payment of $10 for each 100 horsepower for all water appropriated. Some water was diverted and used for the generation of electric energy during that year. For that year and each succeeding year since that time Loup District has paid a total of $5,727.20 based on a diversion rate of 3,500 cubic feet per second of time and a total head of 144 feet. During all the years that these payments have been made, the Department has in effect treated applications Nos. 2287 and 2573 as completed and valid. The Department has in effect treated the completion of construction and the use of some water for power purposes as a completed appropriation, including the putting of the appropriated waters to a beneficial use. This administrative construction, for a period of 25 years, supports the conclusion reached in this opinion that the completion of construction and the placing of the plants in operation, meet the requirements of the statute that the appropriation be put to a beneficial use.

Hickman and the interveners contend that the extension of time to July 1, 1938, extended the time only for purposes of construction and did not purport to extend the time in which the appropriation of water must be put to a beneficial use. We can find no merit in

this contention. It would appear most illogical to hold that the extension of time applied only to the completion date for the construction of the facility and at the same time hold in effect that the appropriation must be put to a public use almost a year before the construction was required to be completed. The extension of time to put to a beneficial use inheres in the extension of time to complete construction.

Loup District complains of the order of the director in reducing the total head of water that it could use at the Columbus and Monroe generating plants from 144 feet to 126 feet. The increase of the head by 18 feet by application No. 2573, duly granted, in no manner increased the rate of diversion of 3,500 cubic feet per second of time, approved in application No. 2287. Consequently it in no manner affected the rights of junior appropriators. Since Hickman and the interveners have suffered no injury nor damage by the grant .of the additional head of 18 feet, they cannot raise this issue. The increase of the total head to use the same water in two plants instead of one, or even to make additional use of water in two existing generating plants, appears to be consistent with the policy of the state's appropriation laws to avoid waste and to secure the greatest benefit possible from the use of the public waters of the state. The Department was required, we think, to grant application No. 2573 unless its grant was not safe, feasible, or not in the public interest. No showing is made that the order granting the additional 18 foot head was in any manner an improvident one. The order. granting application No. 2573 was a proper exercise of the powers lodged in the Department. The holding of the director, that the order granting the increase of total head by 18 feet was void, is consequently in error.

A cross-appeal has been taken in this case. The principle contention taken on cross-appeal is that Loup District's appropriation should have been held to be wholly void, and that the finding of the director that Loup Dis-

trict's claimed total head of water was valid to the extent of 126 feet was in error. All questions raised on cross-appeal are answered by what we have heretofore said. They have been answered adversely to the contentions of the cross-appellants and we therefore hold without further discussion that the cross-appeal cannot be sustained.

The order of the Director of Water Resources is reversed and the petition and petitions in intervention are dismissed. The costs are taxed to petitioner and interveners.

REVERSED AND DISMISSED.