**TEXAS WATER RIGHTS COMMISSION et al., Petitioners,**

**v.**

**L. A. WRIGHT et al., Respondents.**

**No. B–1805.**

Supreme Court of Texas.

Jan. 13, 1971.

Rehearing Denied Feb. 24, 1971.

**644**

Crawford C. Martin, Atty. Gen., Roger Tyler, Asst. Atty. Gen., Frank R. Booth, Austin, Hill & King, Neal King, Mission, for petitioners.

Graves, Dougherty, Gee, Hearon, Moody & Garwood, Robert J. Hearon, Austin, Mann, Cronfel & Mann, Laredo, for respondents.

POPE, Justice.

This case presents the question of the constitutionality of Article 7519a,[1] which authorizes the cancellation of water permits upon proof of ten continuous years of non-use. The Texas Water Rights Commission, after a hearing, cancelled two water permits owned by L. A. Wright, Myrlee Wright McNary, and George T. McNary, hereafter called permittees. On appeal, the District Court of Travis County, rendered judgment that the order cancelling the permits was supported by substantial evidence. The court of civil appeals reversed that judgment, holding that Article 7519a, is a retroactive law which violates Article I, Section 16, of the Texas Constitution, Vernon's Ann.St. and violates the due process clauses of the Texas and U. S. Constitutions, 445 S.W.2d 32. We reverse the judgment of the court of civil appeals and affirm that of the trial court.

The parties are in agreement concerning the facts essential to our opinion. Permit No. 260 was granted in 1918, Permit No. 1083 was granted in 1928, and the permittees have succeeded to the rights under the permits. These permits authorized the permittees to divert water for irrigation purposes from the Rio Grande River at a particular point on the left bank of the river. The permits were used and exercised in conformity with statutory requirements until 1954, when a flood washed out the pumps located at the authorized point of diversion. These pumps were not replaced and no water has been diverted through the authorized diversion point from 1954 to the present time.

In 1957, the Texas Legislature enacted Article 7519a. The effective date of the statute was August 21, 1957. On February 27, 1967, the Texas Water Rights Commission, acting pursuant to the statute, gave the permittees notice of a hearing to cancel their permits. After a hearing on May 2, 1967, the Commission ordered the cancellation of the two permits in question.

The 1918 and 1928 water permits were issued under the permit system established by the Water Act of 1913, (Acts 1913, 33rd Leg., p. 358, ch. 171), as amended by the Water Act of 1917, (Acts 1917, 35th Leg., p. 211, ch. 88). Section 46 of the 1917 Act, codified as Article 7544, provided that water permits were subject to forfeiture when water use was "willfully abandoned during any three successive years." It was held in City of Anson v. Arnett, 250 S.W. 2d 450 (Tex.Civ.App.1952, writ ref. n. r. e.), that to establish willful abandonment of a water permit required proof, not only of non-use, but also of the subjective intent of the permittee to abandon the permit. Basically, the permittees contend that this status of the law fixed their rights under the permits. They contend that Article 7519a would operate retroactively upon their vested rights by changing the law and fixing a new basis for the forfeiture of their permit rights.

### Construction of Article 7519a

 We first need to construe the statute to determine whether it is an aban-

---

1. Statutory references herein are to Vernon's Texas Civil Statutes.

donment or a forfeiture or some other kind of statute. Omitting the portions of the 1957 statute concerning notice and hearing, which are not involved in this case, Article 7519a provides:

*Art. 7519a. Cancellation of unused permits or certified filings*

1. All permits for the appropriation and use of public waters heretofore issued by the Board of Water Engineers of the State of Texas, at least ten (10) years prior to the effective date of this Act or which shall have been issued at least ten (10) years prior to the date of the cancellation proceedings herein authorized, or certified filings filed with said Board * * *, which said permits and certified filings authorize the appropriation and use of public waters, and under which no part of the water authorized to be withdrawn and appropriated has been put to beneficial use at any time during a period of ten (10) consecutive years next preceding the effective date of this Act or the date of the cancellation proceedings herein authorized, whichever is later in time, *shall be presumed to have been wilfully abandoned in that the holder has not been diligent in applying any of such unused water to beneficial use under the terms of the permit or certified filing for each year during the ten-year period and has not been justified* in such non-use for each year during the ten-year period. When the Board finds that its records do not show that any water has been beneficially used under any such permit or certified filing at any time during such ten-year period, it shall cause a public hearing to be held on the matter of cancelling such permit or certified filing. * * * [A]nd the Board shall give such record holder or holders of the permit or certified filing sought to be cancelled and other persons interested in the questions to be determined at such hearing an opportunity to be heard and present evidence that water has, or has not, been beneficially used for the purposes authorized under the permit or certified filing during such ten-year period. At the conclusion of the hearing, *if the Board finds that no water has been beneficially used for the purposes authorized during such ten-year period, such permit or certified filing shall be deemed as wilfully abandoned, shall be null, void and of no further force and effect, and shall be forfeited, revoked and cancelled by the Board.*

2. When the Board of Water Engineers or its successor has determined from its records that all of the public waters authorized to be appropriated under a certified filing, or under a permit issued ten (10) years or more prior to the effective date of this Act, or prior to the date of cancellation proceedings herein authorized, has not been put to a beneficial use at any time during a period of ten (10) consecutive years next preceding the effective date of this Act, or the date of the cancellation proceedings herein authorized, it may cause a public hearing to be held on the matter of cancelling that portion of such permit or certified filing which has not been beneficially used at any time during such ten (10) consecutive years, and if it should appear to the Board that the holder of the permit or certified filing has not been diligent in applying all or any part of such unused water to beneficial use under the terms of the permit or certified filing and has *not been justified* in such nonuse or does not have a bona fide intention of putting such unused waters to beneficial use under the terms of the permit or certified filing within a reasonable period of time after the date of such hearing, then such permit or certified filing shall be subject to forfeiture and cancellation by the Board as to such portion of such waters as to which such facts are so found. The absence from the records of the Board of proof of use of such water during said ten-year period shall be sufficient for initiating such cancellation proceedings. In determining what constitutes a reasonable period of time in this

paragraph, the Board shall give consideration to expenditures made or obligations incurred by the owner of such permit or certified filing in connection therewith, the purpose to which the water is to be applied, the priority under the general law of such purpose, and the amount of time usually necessary to put such water to a beneficial use for the same purpose when diligently developed. * * *

If the Board should find as a result of such hearing that any portion of the water authorized to be diverted and used under such permit or certified filing has not been put to an authorized beneficial use during said ten-year period, *and that reasonable diligence has not been used* by the holder or holders in applying such unused portion of said water to beneficial use under the terms of the permit or certified filing, *and that such holder has not been justified in such nonuse* or does not have a then bona fide intention of putting such unused water to beneficial use under the terms of the permit or filing within a reasonable time after such hearing, the Board shall enter its order cancelling such permit or certified filing as to the portion of the water as to which such findings are made, and said portion of said water shall again be subject to appropriation. (Emphasis added)

Section 1 of the statute concerns total non-use of appropriated water; Section 2 concerns the partial non-use of appropriated water. The main problem arises from the first section. The statute, as appears from the first emphasized portion of Section 1 confuses the concept of abandonment with that of forfeiture. Abandonment is the relinquishment of a right by the owner with the intention to forsake and desert it. City of Anson v. Arnett, supra; 2 Kinney, Irrigation and Water Rights, Sec. 1117 (2d ed. 1912). The statute speaks of diligence and justification and indicates that the Legislature thought those elements were essential to proof of abandonment. The statutory use of the terms abandonment and forfeiture do not fit the common law meaning of either term. In our opinion, however, the emphasized part of the last sentence of Section 1 makes the legislative purpose clear. Even though the Legislature was describing a kind of abandonment or forfeiture which was different from the usual common law concepts, that last sentence shows that the purpose of the statute was to terminate water permits after a hearing upon proof that no water had been beneficially used for a ten-year period. Intent was not to be an element. Moreover the sentence shows that the presumption in the statute was meant to be a conclusive presumption. It was not to be a rebuttable presumption, which could stand only in the absence of evidence to the contrary. IV Wigmore, Evidence, Secs. 1353, 1356 (3d ed. 1940). In a cancellation proceeding based upon total non-use, justification and diligence were to be immaterial. We regard the statute's reference to those elements as the Legislature's reasons for its enactment of the law, and not as requirements that they be proved. Viewing the statute as a whole, we understand the Legislature to be indicating its intent to provide a cancellation procedure to terminate water permits upon timely proof that no water had been used by force of the permits for a period of ten consecutive years. In acting as it has, the Legislature has not only retained Article 7544, which authorized the termination of water permits upon proof of three years of willful abandonment, but has added a new basis for termination, that of ten consecutive years of non-use of water permits.

### Rights Under Article 7519a

We next must determine the nature of the rights which the permittees own and the inherent conditions upon those rights. Permittees argue and the court of civil appeals has held that the two permits are vested rights which may not be terminated by proceedings under Article 7519a because such rights may not be nullified by a retroactive law.

Permittees' argument that their grants of water permits were grants of vested rights is supported by a number of Texas precedents. Justice McClendon in Clark v. Briscoe Irr. Co., 200 S.W.2d 674 (Tex.Civ.App.1947, no writ) thoroughly examined the law of appropriation rights and directly held that a water right, when acquired and perfected, constituted a vested right to the use of the water appropriated. Similar holdings have been made in State Board of Water Engineers v. Slaughter, 382 S.W.2d 111 (Tex.Civ.App.1964, writ ref. n. r. e., 407 S.W.2d 467 [Tex.1966]); Reeves v. Pecos County Water Improvement Dist. No. 1, 299 S.W. 224 (Tex.Com. App.1927, holding approved); City of Anson v. Arnett, 250 S.W.2d 450 (Tex.Civ. App.1952, writ ref. n. r. e.). Rights to riparian waters have been held to be vested rights. Board of Water Engineers v. McKnight, 111 Tex. 82, 229 S.W. 301 (1921). Rights to waters which were acquired under the law of Mexico are vested rights. San Antonio River Authority v. Lewis, 363 S.W.2d 444 (Tex.1963). In our opinion, a matured appropriation right to water is a vested right. However, the right which one obtains by a water permit for appropriated waters is a right which is limited to beneficial and non-wasteful uses. This is made clear by the statute which defines the right which is granted:

*Art. 7542. Water right defined.* A water right is the right to *use* the water of the State when such *use* has been acquired by the application for water under the statutes of this State and for the purposes stated in this chapter. *Such use shall be the basis, the measure and the limit to the right to use water of the State at all times,* not to exceed in any case the limit of volume to which the *user* is entitled and the volume which is necessarily required and can be *beneficially used* for irrigation or other authorized *uses*. (Emphasis added)

By definition, the permittees received only the right to use the water for benefi-cial purposes. 1 Clark, Waters and Water Rights, Sec. 39.3 at 241 (1967); Hutchins, Selected Problems in the Law of Water Rights in the West 27 (U. S. Dep't of Agriculture Misc. Pub. No. 418, 1942); 1 Wiel, Water Rights in the Western States, Sec. 277 (3d ed. 1911). The State was at all times the owner of the corpus of the water covered by the two permits, subject only to the exhaustion of the corpus as a result of beneficial use. Article 7542, supra, in defining the water rights states that it is the right to "use the water of the State." Article 7467 states that the waters of the ordinary flow and underflow and tides of every flowing river or natural stream, the storm, flood, or rain waters of every river or natural stream within the State are the property of the State, but the right to the use of the water may be acquired by appropriation. In Motl v. Boyd, 116 Tex. 82, 286 S.W. 458, 468 (1926), this court held that the title to public navigable streams is in the State in trust for the public.

The permittees did not acquire the right of non-use of water. Common to the law of the western arid regions and of appropriation law generally is the idea that non-use of appropriated waters is a waste of the water. Once water is appropriated, its availability to another user is reduced or defeated, and if the permittee does not use a substantial portion of it the water will run unused into the sea. A workable system of appropriated waters has produced the general rule that the beneficial use of waters is the conservation of the resource, whereas, the non-use of appropriated waters is equivalent to waste. 1 Clark, Waters and Water Rights, Sec. 55.3 (1967); Hutchins, The Texas Law of Water Rights 220 (1961); 2 Kinney, Irrigation and Water Rights, Secs. 911, 912 (2d ed. 1912); 1 Wiel, Water Rights in the Western States, Secs. 478, 481 (3d ed. 1911); El Paso County Water Imp. Dist. No. 1 v. El Paso, 133 F.Supp. 894, 904–905 (W.D.Tex.1955), modified, 243 F.2d 927 (5th Cir. 1957), cert. denied, 355 U.S. 820, 78 S.Ct. 26, 2 L.Ed.2d 36.

Inherently attached to a permit to appropriate waters, therefore, is the duty that the appropriator will beneficially use the water. The State, in administering its water resources, is under a constitutional duty to conserve water as a precious resource and that duty is also inherent in the grant of a water permit. In 1917, Texas adopted Article XVI, Section 59, of the Texas Constitution, commonly called the Conservation Amendment. Naming waters specifically, the amendment declared that the conservation and preservation of natural resources are public rights and duties. It then ordered that "the Legislature shall pass all such laws as may be appropriate thereto." The statutes with which we are here concerned were enacted as a part of that program for the development, preservation, and conservation of the State's natural resources. Clark v. Briscoe Irr. Co., 200 S.W.2d 674 (Tex.Civ.App.1947, no writ).

By way of summary, the vested rights which the permittees held by force of the two water permits, were rights limited to the beneficial use of water. Permittees at no time were vested with the right of non-use of the water for an indefinite period of time. At all relevant times, the State had rights as the owner of the water. It also had a constitutional duty to preserve and conserve its water.

### Retroactivity

We thus confront the contention of the permittees and the basic holding of the court of civil appeals that Article 7519a is a retroactive law and invalid. The Texas Constitution, unlike the Federal Constitution, has a specific prohibition against retroactive laws. The provision in the State Constitution broadly protects rights, although they may not be rights in property. A right has been defined to be "a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law." Mellinger v. City of Houston, 68 Tex. 37, 3

S.W. 249 (1887). Permittees urge that Article 7519a is invalid because it nullifies their vested rights.

We recognize that both in its language and in the manner in which it was applied in this case, Article 7519a has a retroactive effect. It is retroactive in two respects. First, it has a definite impact on rights created before the effective date of the statute. Second, it is retroactive in the sense that it authorizes the Water Rights Commission to take into consideration *conduct,* or more specifically non-conduct, taking place prior to the statute's effective date. The notice and hearing given by the Commission both occurred less than ten years after the effective date of the statute. As a consequence, some six months of the ten-year span of non-use resulting in forfeiture of the permits occurred prior to the statute's effective date.

Mere retroactivity is not sufficient to invalidate a statute. The fact that a statute authorizes the consideration of events that occurred prior to the effective date of the statute does not compel disapproval of the enactment, provided the affected parties were afforded a reasonable time to protect their interests. Cf. Bunn v. City of Laredo, 208 S.W. 675 (Tex.Civ. App.1919), affirmed, 245 S.W. 426 (Tex. Com.App.1922, jdgmt. adopted); Pecos Mercantile Co. v. McKnight, 256 S.W. 933 (Tex.Civ.App.1923, writ ref.); 2 Sutherland, Statutory Construction, Sec. 2210 (3d ed. 1943). Most statutes operate to change existing conditions, and it is not every retroactive law that is unconstitutional. 16A C.J.S. Constitutional Law § 416.

Instances of what is permissible retroactive legislation and what is not have been catalogued in a variety of ways. Retroactive laws have been upheld if the change is called a remedy, and denied if it is a right. As Justice Bradley said in Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885), "Remedies are the life of rights." While our precedents recognize and apply the distinction, they also

recognize that the two terms are often inseparable. Hutchings v. Slemons, 141 Tex. 448, 174 S.W.2d 487, 148 A.L.R. 1320 (1943); Standifer v. Wilson, 93 Tex. 232, 238, 54 S.W. 898, 901 (1900); Mellinger v. City of Houston, supra; Paschal v. Perez, 7 Tex. 348, 365 (1851); De Cordova v. Galveston, 4 Tex. 470, 474 (1849). Other cases permit retroactive operation of statutes upon non-vested or inchoate rights, but not upon rights which are vested, or as defined in Mellinger, supra, a well-founded claim. Deacon v. City of Euless, 405 S.W.2d 59 (Tex.1966); Norton v. Kleberg County, 149 Tex. 261, 231 S.W.2d 716 (1950); Cathey v. Weaver, 111 Tex. 515, 242 S.W. 447 (1922); Mellinger v. City of Houston, supra.

These efforts to catalogue cases have provided some aid as well as confusion in the decisions. See Smith, Retroactive Laws and Vested Rights, 5 Tex.L.Rev. 231, 244 et seq. (1927). A number of scholars have endeavored to discover the underlying rationale for the cases which either uphold or strike down a statute which is attacked as unconstitutionally retroactive. One has said that "the most important single inquiry to be made, from the standpoint of the individual and aside from the public interest, is whether the retroactive law gives effect to or defeats the bona fide intentions or reasonable expectations of the persons affected, * * *." Smith, Retroactive Laws and Vested Rights, 6 Tex.L.Rev. 409, 427 (1928). Another has said that the common characteristic in the cases holding a statute invalid is the element of surprise, by which a person has changed his position or omitted to change it in reliance upon the law in force. Stimson, Retroactive Application of Law—A Problem in Constitutional Law, 38 Mich.L.Rev. 30 (1939). Still another has said, "Where a statute has become a likely basis for substantial reliance by people who may have changed their positions to reap its benefits, the policy against retroactive change is strong." Greenblatt, Judicial Limitations on Retroactive Civil Legislation, 51 Northwestern L.Rev. 540, 566 (1956).

When we measure the impact of Article 7519a on the permittees' rights to water usage by the cases and standards stated above, we conclude that the retroactive effects of the statute do not require its invalidation. We conclude that the permittees could reasonably expect that their rights would be subjected to a remedy enforcing the conditions inherently attached to those rights and enabling the state to assert and protect its own rights and interests in the water. They knew their permits were only usufructuary and that the State was charged by the Constitution to conserve its water. Moreover, the permittees were afforded a reasonable time after the enactment of Article 7519a in which to put their system into operation and to preserve their rights. The Commission did not institute proceedings until nine and one-half years after the effective date of Article 7519a and their permits were valid until the State instituted its proceedings and obtained an order of cancellation. The court of civil appeals found as a fact that there was a total non-use of the water continuously during the full ten-year period prior to the institution of the cancellation proceedings. The fact that six months of the ten-year period is drawn from the time antecedent to the statute's effective date does not defeat the fair notice to which the permittees were entitled. De Cordova v. City of Galveston, 4 Tex. 470, 480 (1849).

We hold that the two water permits were grants to the permittees of usufructuary rights to the State's water upon the implied condition subsequent that the waters would be beneficially used. Hickman v. Loup River Public Power District, 176 Neb. 416, 126 N.W.2d 404 (1964). We hold further that Article 7519a provided a reasonable remedy for the State's enforcement of the condition subsequent after fair opportunity and the failure on the part of the permittees to protect their rights.

A number of western states have terminated outstanding unused water permits, and they have done so for a variety of

reasons with and without enabling legislation. Nebraska, from which state Texas acquired its 1913 and 1917 water permit statutes, has held that non-use or waste of appropriated water operates as a condition subsequent to the limited right which was originally granted. Hickman v. Loup River Public Power District, supra. See also, El Paso County Water Imp. Dist. No. 1 v. El Paso, 133 F.Supp. 894, 904-905 (W.D. Tex.1955), modified, 243 F.2d 927 (5th Cir. 1957), cert. denied, 355 U.S. 820, 78 S.Ct. 26, 2 L.Ed.2d 36. New Mexico in applying a 1907 statute to water permits acquired in 1883 and 1887, held that a permittee's failure to use all or any part of the water available to him for a continuous period of four years caused a forfeiture. The court reasoned that the statute was declaratory of the common law of forfeiture, and only made definite the usually indefinite time required for a forfeiture. Hagerman Irr. Co. v. McMurry, 16 N.M. 172, 113 P. 823 (1911). The court said, "To hold that a formal appropriation, without use, would hold for 20 years—twice the time necessary to obtain title to real estate by adverse possession in New Mexico—would be contrary to the essential nature of the law of waters as established here, which, as to this feature, has been summed up in the words now embodied in our statute law * * * : 'Beneficial use shall be the basis, the measure and the limit of all right to the use of water.' " The language of the quoted statute is almost identical to that of the Texas statute, Article 7542, supra.

The California courts grafted a five-year limitation period on a statute which had declared that water permits would expire upon non-use. The statute had been silent concerning the duration of the non-use. Northern Cal. Power Co. v. Flood, 186 Cal. 301, 199 P. 315 (1921); Lindblom v. Round Valley Water Co., 178 Cal. 450, 173 P. 994 (1918); Smith v. Hawkins, 110 Cal. 122, 42 P. 453 (1895). Arizona applied a forfeiture statute enacted in 1913 to water permits which long antedated the statute. Gila Water Co. v. Green, 29 Ariz.

304, 241 P. 307 (1925). See also, In re Escalante Valley Drainage Area, 12 Utah 2d 112, 363 P.2d 777 (1961).

Permittees rely strongly upon In re Manse Spring and Its Tributaries, 60 Nev. 280, 108 P.2d 311 (1940). The Nevada court held that a water permit which was perfected prior to 1913 could not be impaired or lost by non-use for a period of five years as provided by a later statute. The court said, however, that it did "not wish to be understood as holding that because a person may have established a water right prior to 1913, such acquisition insures him in the right to the use of such water indefinitely, without regard to placing the water to beneficial use." We do not know what that court would have held had it been faced with the ten-year non-use statute which we have before us. We do not choose to follow the holding of the Nevada court, a holding which is apparently the rule only in that state. We agree with the dictum of the court that a permittee has no right to an unlimited period of non-use of water.

### Equal Protection of the Law

Permittees contend also that the statute denies them the equal protection of the law. Section 1 of Article 7519a authorizes cancellation of a water permit upon proof of ten continuous years of total non-use, without consideration of the permittee's diligence or intentions. In contrast, Section 2, authorizing the partial cancellation of permits which have been only partially utilized, allows the defenses of bona fide intention, diligence, and justification. This court has held that a state may draw distinctions between classes of citizens as long as there is a reasonable basis for the distinction. When such distinctions are present, the state may apply different laws, or the same laws differently, to different classes of citizens. Railroad Commission of Texas v. Miller, 434 S.W.2d 670 (Tex.1968); Bjorgo v. Bjorgo, 402 S.W.2d 143 (Tex.1966); 16 Am.Jur.

2d Constitutional Law, Sec. 498 et seq.; 12 Tex.Jur.2d Constitutional Law, Sec. 110 et seq.

 The Legislature could have a number of reasonable bases for treating one who had completely failed to use his water permit for a period of ten years differently from a party who had at least partially utilized his permit. For example, a partial user is more likely to be using less than the full amount of water allowed under his permit because of actual unavailability of the water supply. Under these conditions, he should be accorded the opportunity to justify his non-use. On the other hand, one who has made absolutely no use at all of his water rights could rarely, if ever, assert as justification for non-use that there was a total lack of water for ten continuous years.

Our conclusion is that Article 7519a establishes a constitutional method by which the State may fulfill its duty to conserve its water resources from continuous non-use. The Commission order, issued pursuant to the statute and supported by substantial evidence, was valid and must be upheld.

The judgment of the court of civil appeals is reversed, and the judgment of the trial court is affirmed.

#### On Rehearing

 Permittees urge in their motion for rehearing that Article 7474, enacted in 1917, was an express recognition of their vested right to the non-use of water. This article provides that there shall be no forfeiture of appropriative rights once the permittee has completed the development contemplated by his declaration of appropriation, or as long as such development is prosecuted with reasonable diligence. The argument is that once the physical works contemplated by permit are completed, the permittee possesses a non-forfeitable permit.

In our original opinion we held that Article 7519a was not unconstitutionally retroactive because of its alteration of the status of rights fixed by Article 7544. The reasoning advanced in relation to Article 7544 is equally applicable to Article 7474. Article 7519a is not unconstitutionally retroactive in light of either statute.

The motion for rehearing is overruled.